UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVRA BRANDS LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BAYER HEALTHCARE LLC, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-04312-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE WITHOUT PREJUDICE**<br><br>[Re: ECF 116] |

Tevra Brands, LLC ("Tevra") brings this antitrust suit against Bayer Healthcare LLC, Bayer Animal Health GmbH, and Bayer AG related to the distribution of "squeeze on" Imidacloprid topical flea and tick treatments for pets. *See* Compl., ECF 1. Before the Court is Plaintiff Tevra's Motion for Alternative Service. *See* Mot. For Alt. Service ("Mot."), ECF 116. Tevra seeks an order from the Court authorizing Tevra to serve Bayer Animal Health GmbH and Bayer AG (collectively, "German Defendants") through their U.S.-based lead counsel, Daniel Asimow, by email. *Id.* On May 29, 2019 Bayer Healthcare LLC filed an Opposition. *See* Opp'n, ECF 117. On June 5, 2019, Tevra filed a Reply. *See* Reply, ECF 118. The Court finds that the Motion is appropriate for decision without oral argument and VACATES the hearing set on August 20, 2020. The Motion is DENIED WITHOUT PREJUDICE for the reasons discussed below.

**I.   BACKGROUND**

On July 26, 2019, Tevra filed suit against Bayer AF, Bayer Animal Health GmbH, and Bayer Healthcare LLC for antitrust violations of the Clayton Act § 3 (exclusive dealing and tying) and the Sherman Act § 2 (maintenance of a monopoly). *See* Compl. Bayer AG and Bayer Animal Health GmbH are German companies, while Bayer Healthcare LLC ("BHC") is based in the United States. Mot. at 2. Bayer AG is the parent company and sole owner of the other two defendants. *Id.* BHC

is represented by Daniel Asimow, a partner at Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"). *Id.* The following table summarizes Tevra's attempts at serving the German Defendants:

| Date | Event |
|---|---|
| July 29, 2019 | Summons was issued as to the German Defendants. ECF 7 |
| August 7, 2019 | Tevra reached out to Thomas Szivos, an attorney at Arnold & Porter who was on secondment at Bayer U.S. LLC (a non-party in this case) asking that he accept service on behalf of the German Defendants. Mot. at 2; Opp'n at 1. Mr. Szivos refused, stating that he was not authorized to accept service on behalf of German Defendants. *Id.* |
| August 29, 2019 | Tevra hired First Legal Investigations ("First Legal") to translate the documents to be served on the German Defendants and to effectuate service under the Hague Convention. Mot. at 3. |
| September 25, 2019 | First Legal attempted service through Germany's Central Authority.[1] Mot. at 3. |
| October 1, 2019 | Tevra received confirmation that the Central Authority in Germany received those service packets. Mot. at 3. |
| December 9, 2019 | Polsinelli PC, Plaintiff's counsel's firm, received those service packets back from the Central Authority because First Legal had made some errors in the USM-94 form required for service. Mot. at 3.[2] |
| December 10, 2019 | First Legal attempted service a second time. Mot. at 3. |
| December 16, 2019 | Tevra received confirmation that the Central Authority in Germany received the second set of service packets. Mot. at 3. |
| February 10, 2020 | Polsinelli PC received the second set of service packets back from the Central Authority. Mot. at 3. The Central Authority explained that the service packet did not include the correct number of copies and a listing of the deadlines. *Id.*[3] |

---

[1] Germany objects to service through mail or judicial officers under Article 10 of The Hague Convention, so German Defendants are typically served through Germany's Central Authority. *See Service of Documents between the US and Germany*, German Missions in the United States, https://www.germany.info/us-en/service/08-Documents,CertificationsandApostille/service-of-documents/945230 (last visited June 22, 2020),

[2] First Legal takes full responsibility for this mistake. Russell Ortiz Decl. ¶ 5, ECF 116-2.

[3] First Legal contends that this is incorrect, and that the documents were, in fact, duplicate and did list dates by which responses were required. Russell Ortiz Decl. ¶ 8.

2

| | |
|---|---|
| March 9, 2020 | First Legal attempted service a third time.  Mot. at 3. |
| March 13, 2020 | The court in Dusseldorf received the third submission.  Opp'n at 2. |

On April 23, 2020, Stephan Teipel, a German attorney with the law firm Lederer & Keller in Munich who had been in contact with Tevra's attorneys, spoke to Ms. Bolten, the person at the Dusseldorf court handling Tevra's request for service on the German Defendants.  Stephan Teipel Decl. ¶ 3, ECF 116-1.  Ms. Bolten confirmed First Legal's March 9, 2020 submission was filed with the Dusseldorf court.  *Id.*  Ms. Bolten also explained that the Dusseldorf court is partially closed due to the global COVID-19 pandemic, and that there is a considerable backlog of requests for service of foreign documents.  *Id.*  She was unable to specify when the Dusseldorf court's normal work will resume, but estimated that it would be several months before service is effectuated.  *Id.*  Subsequently, Tevra's counsel, Daniel Owen, emailed Mr. Asimow requesting that, as a result of the COVID-19 delay, the German Defendants waive service under Rule 4(d) and that Mr. Asimow accept service on their behalf.  Daniel Asimow Decl. Ex. A (Owen April 24, 2020 Letter), ECF 117-2; Ex. C (Owen and Asimow Emails), ECF 117-4.

On May 1, 2020, Mr. Asimow responded to Mr. Owen's request, asking for further clarification on the dates of First Legal's submissions to the Central Authority and noting that the COVID-19 related delays have only materialized in the last six to eight weeks, while the lawsuit has been pending for almost a year.  Daniel Asimow Decl. Ex. B (Asimow May 1, 2020 Letter), ECF 117-3.  On the same day, Tevra reached out to Thomas Szivos for a second time, renewing its request that he accept service on behalf of German Defendants.  Mot. at 2.  Mr. Szivos refused again.  *Id.*  Mr. Owen responded to Mr. Asimow's letter by email on May 14, 2020, providing the aforementioned dates on which First Legal submitted the service packets and the dates on which they were returned.  Daniel Asimow Decl. Ex. C (Owen and Asimow Emails).

On May 15, 2020, Tevra filed a Motion for Alternative Service.  *See generally* Mot.

3

## II. LEGAL STANDARD

Tevra's Motion is governed by Federal Rule of Civil Procedure 4(f), which reads as follows:

> **(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory of letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Under Rule 4(f)(3), trial courts may authorize service through a variety of methods, "including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). To comport with due process, "the method of service crafted by the district court must be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 1016-17 (quotation marks and citation omitted). A party seeking authorization to serve under Rule

4(f)(3) need not show that all feasible service alternatives have been exhausted but instead, it needs to "demonstrate that the facts and circumstances of the … case necessitate[] the district court's intervention." *Id*. at 1016. "[T]he task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is committed "to the sound discretion of the district court." *Id*.

## III. DISCUSSION

Tevra seeks leave to serve the German Defendants through BHC's American-based counsel, Mr. Asimow of Arnold & Porter, pursuant to Rule 4(f)(3). *See generally* Mot. Tevra asserts that alternative service is appropriate in light of anticipated delay due to the COVID-19 global pandemic, and that Tevra would otherwise be prejudiced because discovery closes in October 2020 and it has not yet been able to seek discovery from the German Defendants. *Id.* In opposition, BHC argues that Tevra has not shown that alternative service is needed as "(A) delays in service are due to Tevra's own inaction and errors, (B) there is no risk of prejudice to Tevra, and (C) Tevra's proposal to ignore the Hague Convention would violate principles of international comity." Opp'n at 4.

Rule 4(f)(3) allows for an alternate means of service as long as it is directed by a court and not prohibited by international agreement. It is not necessary for a plaintiff to attempt service by all feasible means of service before turning to Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1016. However, the fact that an alternative method of service is not prohibited by international agreement does not mean that the plaintiff is entitled to use such a method under Rule 4(f)(3). The decision to provide an order under Rule 4(f)(3) is within the sound discretion of the Court, which must determine whether the "particularities and necessities of a given case require alternative service of process." *Rio Props.*, 284 F.3d at 1016. The Court finds that the circumstances at bar do not necessitate its intervention.

Here, Tevra attempted to serve the German Defendants three times pursuant to the Hague Convention. Mot. at 3. The first two attempts failed due to deficiencies in the service packets submitted to the Central Authority in Germany. *Id.* On the third, Tevra was notified that the Dusseldorf courts are not fully functioning due to COVID-19, and that there is a large backlog of service requests. *Id.* In determining whether to grant alternative service under Rule 4(f)(3), some

1    courts have considered whether "there was evidence that the plaintiff's service under the Hague
2    Convention was actually delayed." *Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 259 (N.D. Cal.
3    2018). Tevra contends that because it "has been attempting to serve the German Defendants through
4    the German Central Authority for the past seven months" and due to the limited operations of the
5    Dusseldorf court, service on German Defendants has actually been delayed. Mot. at 7. BHC
6    counters that any delay is due to Tevra's own errors, and that Tevra "has not acted with diligence or
7    care." Opp'n at 4.

8    The Court agrees with BHC. The summons was issued as to the German Defendants on July
9    29, 2019. ECF 7. Tevra did not begin to make attempts at service or even procure a German
10   translation of the Complaint until a month later. Mot. at 3. Instead, Tevra attempted to effectuate
11   service through alternative means by contacting Mr. Szivos, an attorney on secondment representing
12   a non-party affiliate of the German Defendants. Mot. at 2. When Mr. Szivos unsurprisingly refused
13   to accept service in early August 2019, Tevra waited until September 25, 2019, two months after
14   filing suit, to attempt service via the Hague Convention. Mot. at 3. After the first and second service
15   packets were rejected by the German Central Authority, Tevra inexplicably waited another month
16   before making a third attempt at service. *Id*. And all of these missteps took place before the COVID-
17   19 pandemic caused any disruptions to the service of process in Germany.

18   Despite this record, Tevra maintains that "Rule 4(f)(3) is neither a 'last resort' nor
19   'extraordinary relief,' but merely one means among several which enables service of process on an
20   international defendant." Reply at 2 (citing *Rio Props.*, 284 F.3d at 1015). Tevra argues that
21   alternative service should be allowed to prevent further delays in litigation, particularly in this
22   instance, as Tevra has attempted in good faith to serve German Defendants pursuant to the Hague
23   Convention. Reply at 2. For support, Tevra cites to four cases in which courts have allowed
24   alternative service under Rule 4(f)(3) even where the Hague Convention applies. Mot. at 5-6.

25   The Court finds that Tevra's cited authority are clearly distinguishable from the current
26   record in this case. In *Prods. & Ventures Int'l*, the plaintiff unsuccessfully attempted to serve the
27   Chinese defendants via the processes set forth under the Hague Convention for eleven months, and
28   believed that it would take eighteen months or longer to successfully serve them. *Prods. & Ventures*

*Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 1378532, at *3 (N.D. Cal. Apr. 11, 2017). Here, the correct and complete service packets were only submitted to the Central Authority on March 9, 2020, just over three months ago.

The court in *Updateme Inc.* only considered service on counsel for a U.S. subsidiary because the plaintiff "assert[ed] that all four defendants [were] alter egos, file[d] one tax return together, [had] the same counsel, and act[ed] as a single enterprise." *Updateme Inc. v. Axel Springer SE*, 2018 WL 306682, at *1 (N.D. Cal. Jan. 5, 2018). Tevra has not alleged that the German Defendants and BHC are the same entity, or that they act as a single enterprise.

In *Volkswagenwerk*, the Supreme Court considered service on a U.S. subsidiary as Volkswagen's agent under the Illinois long-arm statute, not on counsel. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988). Tevra has not claimed that Mr. Asimow is an agent of the German Defendants, nor has it argued for service under California's long-arm statute. Finally, in *Rio Props.*, the international defendant was elusive, "striving to evade service of process." *Rio Props.*, 284 F.3d at 1016. There are no allegations here that the German Defendants are evading service or cannot be located.

More importantly, the Court agrees with BHC that the court in Dusseldorf has not even had adequate time to process Tevra's third request for service. *See* Opp'n at 5. Although the Hague Convention does not explicitly specify a timeframe for a foreign country's Central Authority to effectuate service, there is a presumption that a Central Authority has six months before a party can use alternate methods of service. *See* Fed. R. Civ. P. 4, 1993 Advisory Committee Notes, subd. (f); *see also U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*, No. C-07-1221-RSL, 2007 WL 3012612, at *2 (W.D. Wash., Oct. 11, 2007) (noting that the court can exercise its discretion to authorize alternative service when a country's Central Authority fails to effectuate service within the six-month period provided by the Hague Convention). Using Rule 4(f)(3) because "it will be much faster…by itself is not sufficient justification for the Court to authorize service by alternative method." *Jimena v. UBS AG Bank*, No. CV-F-07-367, 2010 WL 2465333, at *10 (E.D. Cal. June 10, 2010) (citation omitted).

Tevra reasons that it has been "trying to serve the German Defendants since September

2019." Reply at 3.  It notes that "delays of four to six months warrant[] substituted service," and "delays of six to eight months warrant[] substituted service even where plaintiff [does] not first attempt to complete service through the Hague Convention."  *Prods. & Ventures Int'l*, 2017 WL 1378532, at *2.  However, all delays up until Tevra's third submission to the Central Authority on March 9, 2020, were due to Tevra's (or Tevra's vendor's) errors and not evidence of delay by the Central Authority.  In short, the Court finds that because the German Central Authority has only been in possession of complete service packets since March 2020, an order for alternative service under Rule 4(f)(3) is premature at this time.  Trial in this case is more than a year away, leaving more than enough time for Tevra to serve the German Defendants and litigate its case.

These are certainly unprecedented times as the hardships of COVID-19 weigh heavily on all facets of life.  But where a plaintiff fails to show that "service through the Convention would be unsuccessful or result in unreasonable burden or delay," simply citing COVID-19 as an obstacle is not sufficient to bypass the requirements of the Hague Convention.  *See Aerodyn Eng'g, LLC v. Fidia Co.*, No. 20-10896, 2020 WL 3000509, at *2 (E.D. Mich. June 4, 2020) (denying motion for alternative service on foreign defendants where plaintiff cited to circumstances surrounding the COVID-19 pandemic).

That said, the Court recognizes that due to the ongoing ramifications of the COVID-19 pandemic, service on German Defendants may actually be delayed.  Thus, the Court denies Tevra's Motion without prejudice.  If and when service on the German Defendants is actually delayed, Tevra may renew its motion for alternative service.  And based on Mr. Asimow's representation to the Court, the Court is persuaded that, if necessary, service through Mr. Asimow – BHC's counsel – would be reasonably calculated to apprise the German Defendants of the pendency of the action and afford them an opportunity to present their objections.  *See Rio Props.*, 284 F.3d at 1016-17; Dec. 10, 2019 CMC Tr. At 6:4-6 (Mr. Asimow: "My instructions are that if [the German Defendants] are served, I am to move to dismiss for lack of personal jurisdiction because they don't do business in the United States."), ECF 64.  It is evident that Mr. Asimow is in contact with the German

1  Defendants and is prepared to represent their positions.[4]

## IV. ORDER

For the reasons discussed above, Plaintiff's Motion for Alternative Service is DENIED WITHOUT PREJUDICE.  Plaintiff may renew its request upon a showing of actual delay, and that the Court's intervention is necessary to avoid burdensome or futile attempts at service.

**IT IS SO ORDERED.**

Dated: June 23, 2020

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] The Court declines to address BHC's arguments as to whether the German Defendants are properly sued in this action.  *See* Opp'n at 7-9.  The Court agrees with Tevra that such arguments are irrelevant to the present Motion for alternative service.  *See* Reply at 4-5.