```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4

 5      TEVRA BRANDS, LLC,            )  C-19-04312 BLF
                                      )
 6                     PLAINTIFF,     )  SAN JOSE, CALIFORNIA
                                      )
 7              VS.                   )  SEPTEMBER 10, 2020
                                      )
 8      BAYER HEALTHCARE LLC, AND BAYER )  PAGES 1-29
        ANIMAL HEALTH GMBH, AND BAYER )
 9      AG,                           )
                                      )
10                     DEFENDANTS.    )
        _____ )
11

12

13                  TRANSCRIPT OF ZOOM PROCEEDINGS
                 BEFORE THE HONORABLE BETH LABSON FREEMAN
14                    UNITED STATES DISTRICT JUDGE

15

16      A P P E A R A N C E S:

17      FOR THE PLAINTIFF:    POLSINELLI PC
                              BY:  DANIEL D. OWEN
18                                 G. GABRIEL ZOROGASTUA
                              900 W. 48TH PLACE, SUITE 900
19                            KANSAS CITY, MISSOURI  64112

20      FOR THE DEFENDANTS:   ARNOLD & PORTER KAYE SCHOLER LLP
                              BY:  SEAN M. CALLAGY
21                                 DANIEL B. ASIMOW
                              THREE EMBARCADERO CENTER, 10TH FLOOR
22                            SAN FRANCISCO, CALIFORNIA  94111

23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

1    SAN JOSE, CALIFORNIA                    SEPTEMBER 10, 2020

2                    P R O C E E D I N G S

3        (ZOOM PROCEEDINGS CONVENED AT 9:49 A.M.)

4            THE COURT:  OKAY.  LET'S TURN TO OUR NEXT CASE.

5            THE CLERK:  COUNSEL, WE'RE GOING TO BE MOVING ON TO

6    THE TEVRA VERSUS BAYER CASE NEXT.  IF YOU WOULD PLEASE RAISE

7    YOUR HANDS.

8        (PAUSE IN PROCEEDINGS.)

9            THE COURT:  ALL RIGHT.  HAVE WE GOT EVERYBODY?

10           THE CLERK:  YES.

11           THE COURT:  OKAY.  THEN LET'S CALL THE CASE.

12       GOOD MORNING TO EVERYONE.

13           THE CLERK:  CALLING CASE 19-4312, TEVRA BRAND VERSUS

14   BAYER HEALTHCARE.

15       COUNSEL, PLEASE STATE YOUR APPEARANCES, AND IF WE COULD

16   BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENSE.

17           MR. OWEN:  GOOD MORNING, YOUR HONOR.

18       PLAINTIFF TEVRA BRANDS LLC APPEARS BY DAN OWEN OF THE

19   KANSAS CITY OFFICE OF POLSINELLI.

20       I'LL LET MY COLLEAGUE, MR. ZOROGASTUA, INTRODUCE HIMSELF.

21           MR. ZOROGASTUA:  GOOD MORNING, YOUR HONOR.

22       GABE ZOROGASTUA, ALSO FOR THE PLAINTIFF.

23           MR. CALLAGY:  GOOD MORNING, YOUR HONOR.

24       THIS IS SEAN CALLAGY OF ARNOLD & PORTER ON BEHALF OF THE

25   BAYER GERMAN DEFENDANTS, BAYER AG, AND BAYER HEALTHCARE GMBH.

1     ALSO ON THE LINE IS MY PARTNER, DAN ASIMOW, OF

2 ARNOLD & PORTER.

3          THE COURT:  GOOD MORNING, MR. ASIMOW, MR. CALLAGY.

4     GOOD MORNING TO ALL OF YOU.

5     ALL RIGHT.  YOU PROBABLY HEARD ME WITH THE LAST ONE.  I'M

6 UNDER -- I HAVE ANOTHER CASE AFTER YOURS, SO I UNFORTUNATELY

7 HAVE TO BE ON A TIME LIMIT.  YOU WOULDN'T HAVE KNOWN THAT FROM

8 THE LAST TIME WHERE WE SPENT QUITE A BIT OF TIME, AND I

9 APPRECIATED YOUR WILLINGNESS TO EDUCATE ME ABOUT THE CASE.

10 THAT WAS VERY HELPFUL.

11     LET ME GIVE YOU SOME COMMENTS AND THEN I'LL TURN TO THE

12 ARGUMENT HERE.

13     I DON'T SEE THAT THE PLAINTIFFS HAVE ALLEGED ENOUGH FACTS

14 FOR PERSONAL JURISDICTION OVER THESE GERMAN DEFENDANTS AT THIS

15 TIME.  I DO WANT MR. CALLAGY AND MR. ASIMOW TO ADDRESS THE

16 ISSUE OF THE CLAIM THAT BAYER AG ADMITTED JURISDICTION IN AN

17 FTC ACTION.  I DIDN'T ACTUALLY SEE THAT BEING ADDRESSED IN THE

18 REPLY PAPERS AND I JUST WANT TO MAKE SURE I'M NOT MISSING

19 SOMETHING THERE.

20     I ALSO -- I'M NOT OPPOSED TO ALLOWING JURISDICTIONAL

21 DISCOVERY, BUT WHAT HAS BEEN SUGGESTED IN THESE PAPERS IS

22 NOTHING MORE THAN A FISHING EXPEDITION AND I WOULD NOT ALLOW

23 IT.  PLUS IT WOULD PROBABLY TAKE SIX MONTHS TO A YEAR TO

24 COMPLETE, AND THAT'S NOT APPROPRIATE EITHER.

25     SO I'D BE -- IF I DECIDE THERE'S NOT ENOUGH ALLEGATION FOR

1    PERSONAL JURISDICTION AGAINST THESE COMPANIES, I WOULD BE

2    WILLING TO RECEIVE A NARROWED REQUEST FOR JURISDICTIONAL

3    DISCOVERY.

4        BUT WE'RE NOT GOING TO HAVE THESE BIG COMPANIES PROVIDE

5    EVERY TRAVEL VOUCHER OVER THE LAST SIX YEARS TO THE

6    UNITED STATES.  THAT'S JUST NOT HAPPENING.

7        I GUESS THE ONLY GOOD THING WE COULD SAY IS THAT THERE IS

8    ZERO SINCE MARCH, SO THAT WILL MAKE THE JOB EASIER.

9        SO THAT'S WHERE I AM.  I -- YOU KNOW, IT'S -- I'M JUST NOT

10    PERSUADED THAT STRATEGIC INPUT, MARKETING ADVICE, EVEN

11    MONITORING THE CONTRACTS IS SUFFICIENT TO BRING THESE

12    COMPANIES, BAYER AG AND BAYER ANIMAL HEALTH, INTO THIS DISPUTE.

13        AND, OF COURSE, I'M NOT FOCUSSING ON EVERYTHING BAYER DOES

14    IN THE U.S.  I'M FOCUSSING ON THEIR CONDUCT RELATED TO THIS

15    CASE AND TO THE SUBJECT MATTER OF THIS CASE.

16        SO WITH THOSE BRIEF COMMENTS BEING STATED, MR. CALLAGY,

17    ARE YOU TAKING THE LEAD ON THIS ONE?

18           MR. CALLAGY:  YES, I WILL, YOUR HONOR.

19           THE COURT:  OKAY.  GO AHEAD, PLEASE.

20           MR. CALLAGY:  THANK YOU.

21        SO WE'LL BE MINDFUL OF THE COURT'S LIMITED TIME TODAY, AND

22    WE APPRECIATE YOUR OPENING OBSERVATION THAT THERE ISN'T ENOUGH

23    ALLEGED IN THE FIRST AMENDED COMPLAINT TO GIVE THE GERMAN

24    DEFENDANTS FAIR NOTICE OF THE CLAIMS AGAINST THEM OR A BASIS

25    FOR THE COURT TO EXERCISE JURISDICTION.

1      THE CENTERPIECE OF THE COMPLAINT, OF COURSE, ARE TERMS OF

2  CONTRACTS THAT ARE IN THE RECORD AND HAVE BEEN PROVIDED TO

3  TEVRA, AND IT'S UNDISPUTED THAT THE PARTIES TO THOSE CONTRACTS

4  ARE BAYER HEALTHCARE LLC ON THE ONE HAND, THE U.S. ENTITY, AND

5  THEN A SERIES OF RETAILERS AND DISTRIBUTORS ON THE OTHER HAND.

6      WE KNOW THAT -- WELL, WE CAN SEE FROM THE FACE OF THE

7  CONTRACT THAT NEITHER OF THE TWO GERMAN DEFENDANTS ARE PARTIES.

8      TEVRA'S ALLEGATIONS DO NOT PLAUSIBLY STATE A ROLE OUTSIDE

9  OF THESE CONTRACTS BY EITHER GERMAN DEFENDANT.

10      TEVRA POINTS YOU TO PARAGRAPH 4, FOOTNOTE 2, OF THE FIRST

11  AMENDED COMPLAINT WHERE TEVRA SAYS, WELL, IT'S OTHER THINGS,

12  IT'S TACIT AGREEMENTS OR UNDERSTANDINGS, BUT THERE'S NO

13  PLEADING TO EXPLAIN WHO THE PARTIES ARE TO THOSE OR WHEN THEY

14  WERE ENTERED INTO, AND OTHER SUCH THINGS, OR A NO GENERICS

15  CONSPIRACY.

16      WELL, THERE ARE MANY, MANY CASES, MOST PROMINENTLY THE

17  TWOMBLY CASE, SAYING THAT IF YOU WANT TO ALLEGE CONSPIRACY, YOU

18  HAVE TO ALLEGE ACTUAL FACTS, NOT JUST A LEGAL CONCLUSION OF A

19  CONSPIRACY OR COMBINATION.  YOU HAVE TO ALLEGE ACTUAL FACTS

20  THAT SHOW THE DEFENDANTS INTENDED TO JOIN THE CONSPIRACY AND,

21  YOU KNOW, ADDITIONAL FACTS BEYOND THAT EVEN.  AND WE HAVEN'T

22  GOTTEN TO THAT STARTING POINT YET.

23      SO FOR THAT REASON, TEVRA, IN ITS OPPOSITION, SEEMS TO BE

24  POINTING YOU TO, WELL, HERE'S SOME EVIDENCE YOU SHOULD

25  CONSIDER.  IF THE COMPLAINT ISN'T SUFFICIENT, AND IT SEEMS

```
 1        WE'RE KIND OF ALL IN AGREEMENT IT MAY NOT BE --

 2                 THE COURT:  I DON'T THINK WE'RE ALL IN AGREEMENT.

 3                 MR. CALLAGY:  WELL, OKAY, FAIR ENOUGH.

 4                 THE COURT:  PLAINTIFF DOESN'T AGREE.

 5                 MR. CALLAGY:  BUT TEVRA DOES WISH TO POINT YOUR HONOR

 6        TO SOME PIECES OF EVIDENCE FROM THE RECORD PROVIDED BY

 7        BAYER HEALTHCARE IN DISCOVERY.

 8            AND IF WE CONSIDER THOSE, THEY STILL DON'T GET TEVRA TO

 9        WHERE IT NEEDS TO BE.  THEY FALL INTO TWO CATEGORIES.  ONE IS

10        KIND OF MISTAKEN IDENTIFICATION OF A BAYER HEALTHCARE EMPLOYEE

11        AS ALLEGEDLY A BAYER AG EMPLOYEE, WHICH HE IS NOT; AND THE

12        OTHER ARE THE KIND OF GARDEN VARIETY PARENT/SUBSIDIARY

13        STRATEGIC GUIDANCE DOCUMENTS THAT THE CASES SAY AREN'T ENOUGH

14        TO EITHER IMPUTE CONTACTS TO A FOREIGN PARENT, OR TO EXERCISE

15        DIRECT JURISDICTION OVER THE PARENT.

16            SO LET'S TAKE THE FIRST CATEGORY.  THIS CONCERNS ONE

17        INDIVIDUAL WHOSE SIGNATURE BLOCK CONTAINED TWO INCORRECT --

18        WELL, ACTUALLY JUST ONE INCORRECT WORD FOR PART OF 2017.

19        INSTEAD OF IT SAYING "BAYER HEALTHCARE," IT SAID "BAYER AG."

20            HIS DECLARATION EXPLAINS THAT THAT WAS A MISTAKE, THAT'S

21        PART -- SOMETHING HE JUST HAPPENED TO CLICK ON A DROP DOWN

22        MENU.  HE'S NEVER BEEN EMPLOYED BY BAYER AG.

23            ONCE YOU PUT IN AFFIDAVIT EVIDENCE CONCERNING THESE

24        MATTERS, IT'S NOT A CONTESTED ISSUE.  THE COURT IS NOT REQUIRED

25        TO ACCEPT ARGUMENT BASED ON AN INFERENCE BASED ON A SINGLE, OR
```

1    TWO E-MAILS, OVER SWORN AFFIDAVIT TESTIMONY, AND THAT'S WHAT WE

2    HAVE HERE.

3         BUT TO YOUR HONOR'S COMMENT A MOMENT AGO, SUPPOSE IT WAS

4    EXERCISING SOME KIND OF -- SUPPOSE IT WAS BAYER AG AND SUPPOSE

5    IT WAS EXERCISING SOME KIND OF OVERSIGHT OR MONITORING.

6         EVEN THAT ISN'T ENOUGH.  IT'S NOT ENTERING INTO THE

7    CONTRACTS THEMSELVES.  IT'S A FINANCIAL ANALYST SIMPLY SAYING,

8    WELL, I'M GOING TO PROCESS THIS REBATE.  ARE WE OKAY TO PROCESS

9    THE REBATE?

10        THAT'S THE KIND OF BACK END SERVICING THAT ISN'T THE SAME

11   THING AS THE FOREIGN DEFENDANT PURPOSEFULLY DIRECTING ITS

12   CONTACTS TOWARDS THE UNITED STATES.

13        SO EVEN IF YOU GIVE THEM THE ASSUMPTION OF THE -- THE

14   BENEFIT OF SEVERAL ASSUMPTIONS WHICH THEY'RE NOT ENTITLED TO AT

15   THIS POINT, IT STILL DOESN'T GET YOU OVER THE HURDLE TO

16   EXERCISE JURISDICTION OVER BAYER AG.

17        AND OF COURSE THAT DOESN'T SPEAK AT ALL TO THE OTHER

18   ENTITY, BAYER ANIMAL HEALTH GMBH.

19        MOST OF THE EVIDENCE OR DOCUMENTS SUBMITTED BY TEVRA

20   PERTAIN TO THAT LATTER ENTITY, AND THEY SHOW THE KIND OF GARDEN

21   VARIETY ADVICE, STRATEGIC GUIDANCE THAT MANY DECISIONS HAVE

22   HELD ARE NOT SUFFICIENT TO ALLOW EXERCISE OF JURISDICTION OVER

23   A FOREIGN COMPANY.

24        THE LOS GATOS MERCANTILE CASE GOES INTO SOME FACTUAL

25   DISCUSSION OF THIS.  THAT INVOLVED A SAUDI PARENT CORPORATION

1    THAT NOT ONLY PROVIDED GUIDANCE, BUT EVEN APPROVED PRICING

2    DECISIONS ON BEHALF OF A SUBSIDIARY.  THAT WAS HELD TO NOT BE

3    ENOUGH.

4         WE DON'T EVEN HAVE THAT ALLEGATION OR PROFFER IN THIS

5    CASE.

6         AND THERE ARE SEVERAL OTHER CASES THAT ARE OF A KIND.  WE

7    DON'T NEED TO DISCUSS ALL OF THEM.  BUT THEY DO STAND FOR THE

8    PROPOSITION THAT THE PARENT NEED NOT CUT OFF CONTACT WITH THE

9    SUBSIDIARY.  IT DOESN'T HAVE TO PUSH THE SUBSIDIARY OUT OF THE

10   NEST AND NOT DEAL WITH IT IN THE FUTURE IN ORDER FOR THE COURT

11   TO CONTINUE RESPECTING THE DIFFERENT CORPORATE FORUMS.

12        SO WITH THAT IN MIND, TEVRA DOES SUGGEST AN ALTERNATE

13   PATH, BUT IT HAS NEITHER PLEADED NOR OFFERED ANY OF THOSE.

14        THEY MENTIONED AGENCY AND ALTER EGO.  AGENCY MAY NOT

15   ACTUALLY BE A VIABLE THEORY ANYMORE UNDER THE WILLIAMS DECISION

16   IN THE NINTH CIRCUIT.  EVEN IF IT WERE, THERE'S NO PLEADINGS IN

17   THE FIRST AMENDED COMPLAINT TO GO TO AGENCY.

18        SIMILARLY, ALTER EGO HAS A REQUIRED SHOWING THAT THE TWO

19   ENTITIES HAVE CEASED TO EXIST.  THERE'S NO SEPARATE PERSONHOOD

20   BETWEEN THE TWO ENTITIES AND THE CONDONING THAT WOULD WORK A

21   FRAUD OR INJUSTICE.  WE JUST DON'T HAVE THAT HERE.

22        SO THAT TAKES US TO THE QUESTION OF, OKAY, WHAT THEN?  IS

23   JURISDICTIONAL DISCOVERY APPROPRIATE?

24        WE DISCUSSED THIS ISSUE SEVERAL WEEKS AGO WHEN YOUR HONOR

25   GRACIOUSLY AGREED TO HELP US DISCUSS THESE POINTS.  ONE OF

1        TEVRA'S POINTS AT -- TEVRA'S COUNSEL SAID AT THAT DISCUSSION,

2        IT WAS REALLY THE REQUEST FOR ADMISSION THAT THEY REALLY WANTED

3        ANSWERS TO.

4            BUT THE TEN REQUESTS FOR ADMISSION TO BAYER AG CONCERN AN

5        FTC PROCEEDING THAT IS NOT ABOUT THE CONTRACTS AT ISSUE HERE.

6        YES, IT IS ABOUT ANIMAL PRODUCTS.  IT HAS TO DO WITH THE

7        DIVESTITURE OF CERTAIN ASSETS.

8            BUT TEVRA'S ARGUMENT SEEMS TO BE THAT BECAUSE BAYER AG

9        AGREED TO BE -- OR THAT IT WAS SUBJECT TO THE JURISDICTION OF

10       THE FTC FOR THAT PROCEEDING, THAT THAT WOULD SOMEHOW FLOW OVER

11       INTO THIS CASE, AND THE CASES SAY YOU CAN'T DO THAT.

12           THE SUPREME COURT MADE THAT REALLY CLEAR IN

13       BRISTOL-MYERS SQUIBB IN 2017, HOLDING THAT THERE'S NO SLIDING

14       SCALE, THERE'S NOT GENERAL JURISDICTION.  THAT IS NOT DISPUTED

15       IN THE BRIEFS AND THAT CAN'T BE CREDIBLY ARGUED HERE.

16           BUT TO MAINTAIN PERSONAL JURISDICTION, THERE MUST BE A

17       CONNECTION BETWEEN THE ACTS ALLEGED AND THE EXERCISE OF

18       JURISDICTION.

19           THE SALE OF CORPORATE ASSETS IS NOT WHAT THIS CASE IS

20       ABOUT, AND THEREFORE, REGARDLESS OF WHAT THE FTC DID AND

21       REGARDLESS OF WHETHER BAYER AG AGREED TO BE SUBJECT TO THE

22       FTC'S JURISDICTION, EVEN A FLAT ADMISSION TO EVERY SINGLE ONE

23       OF THE RFA'S WOULDN'T ALLOW THIS COURT TO EXERCISE PERSONAL

24       JURISDICTION OVER BAYER AG.

25           THE OTHER REQUESTS FOR ADMISSIONS WERE TO ISSUES SUCH AS

1    ADMIT THAT BAYER ANIMAL HEALTH GMBH IS A DIVISION OF BAYER AG.

2         WELL, AGAIN, THAT -- AN ADMISSION TO THAT WOULDN'T GET

3    TEVRA WHERE IT NEEDS TO BE TO SHOW THAT EITHER BAYER AG OR

4    BAYER ANIMAL HEALTH GMBH ENGAGED IN PURPOSEFUL DIRECTION OF

5    CONDUCT TOWARDS THE FORUM, THE UNITED STATES, THAT HAD THE

6    EFFECT ON COMPETITION THAT TEVRA ALLEGES IN ITS COMPLAINT.

7         SO THE KEY JURISDICTIONAL DISCOVERY REQUESTS THAT TEVRA

8    SAYS ARE THE MOST IMPORTANT TO IT WOULDN'T REALLY HELP IT IN

9    THIS CASE, SO WE DON'T SEE A NEED FOR THERE TO BE FURTHER

10   DISCOVERY IF THAT'S WHAT THEY SAY THEY WANT.

11        THE COURT ENCOURAGED TEVRA AT THAT PRIOR CONFERENCE TO

12   CONSIDER NARROWING ITS REQUESTS, AND WE'VE REITERATED THAT TO

13   TEVRA SINCE THEN, STATING THAT WE THINK, AS WRITTEN, THEY'RE

14   OVERBROAD, BUT IF THERE'S SOMETHING SPECIFIC YOU WISH TO MEET

15   AND CONFER ABOUT, WE CAN TALK ABOUT THAT.

16        TEVRA DIDN'T TAKE US UP ON THAT OFFER, AND SO THAT'S A

17   STRONG INDICATION THAT THEY DON'T HAVE ANOTHER BASIS FOR

18   SEEKING JURISDICTION IN THOSE REQUESTS.

19             THE COURT:  OR MR. OWEN WANTED TO WAIT AND HEAR WHAT

20   I HAD TO SAY TODAY BEFORE HE DESIGNED THE MORE NARROWLY FORMED

21   DISCOVERY REQUESTS.

22             MR. CALLAGY:  PERHAPS.

23        BUT THIS CASE HAS BEEN PENDING FOR NEARLY 14 MONTHS AND

24   THE PACE, THE PACE -- THAT'S NOT TO POINT FINGERS, BUT THE PACE

25   HAS GONE SLOWLY, AND IF WE'RE TO KEEP THE GERMAN DEFENDANTS IN

1    THE CASE, THERE'S GOING TO BE SERIOUS CONCERNS AROUND THE SCOPE

2    OF THE DISCOVERY AND THE BURDEN OF RESPONDING TO IT, ESPECIALLY

3    ONCE YOU -- WHEN YOU CONSIDER THERE'S BOTH A PERSONAL

4    JURISDICTION DEFECT UNDER THE CURRENT PLEADINGS, AS WELL AS A

5    PLAUSIBILITY DEFECT, NOT ONLY FOR FAILURE TO SAY WHAT EXACTLY

6    THESE TWO ENTITIES DID, BUT ALSO FOR THE REASONS ADDRESSED IN

7    THE COURT'S PRIOR HEARING ON BAYER HEALTHCARE'S MOTION TO

8    DISMISS.

9         THE COURT:  RIGHT.  AND ON YOUR 12(B)(6) HERE, I'M

10   PROBABLY GOING TO ASK MR. OWEN, WHEN HE AMENDS THE COMPLAINT

11   BASED ON THE OTHER ORDER I'M ABOUT TO ISSUE, THAT HE LAY OUT

12   MORE FACTS ON THE CONSPIRACY ITSELF.  ONCE HE ADEQUATELY

13   ALLEGES A CONSPIRACY, THEN I THINK HE CAN LUMP ALL THE

14   DEFENDANTS TOGETHER, BUT I DON'T THINK THAT'S QUITE BEEN DONE

15   YET.

16        AND SO, YOU KNOW, I'VE BEEN DRAGGING MY HEELS A LITTLE ON

17   GETTING THE OTHER ORDER OUT.  IT SHOULD BE OUT LATER THIS WEEK.

18        BUT WE WERE HOPING FOR ONE AMENDED COMPLAINT ANYWAY, SO

19   MAYBE I HAVEN'T DELAYED YOU TOO MUCH.

20        BUT YOUR POINT I THOUGHT WAS WELL TAKEN ON THE 12(B)(6)

21   PORTION.

22        MR. CALLAGY:  ALL RIGHT.  THANK YOU.

23        SO ONE LAST POINT TO MAKE ON JURISDICTIONAL DISCOVERY IS

24   THAT WHERE IT IS ALLOWED, IT'S USUALLY TARGETED TO THE KINDS OF

25   THINGS THAT WOULD SHOW WHETHER THE DEFENDANTS, SAY, ENGAGED IN

```
 1        THE KIND OF CONDUCT ALLEGED HERE, AND WHAT WOULD THAT BE?

 2            WELL, THE CONTRACTS AT ISSUE FOR ONE, BUT TEVRA HAS HAD

 3     THOSE SINCE NOVEMBER.

 4            OTHER CASES HAVE ALLOWED BASED ON A SPECIFIC SHOWING, SUCH

 5     AS THE NEXUS CASE WHERE THERE WAS A QUESTION OF WHETHER

 6     RESEARCH AND DEVELOPMENT WAS CONDUCTED BY HUAWEI AT A FACILITY

 7     IN SANTA CLARA.

 8            OKAY, THAT'S A PRETTY TARGETED ISSUE.  WE HAVEN'T HEARD

 9     THAT YET.  WE MAY, BUT WE HAVEN'T YET.

10            AND SO THAT TAKES US TO THE QUESTION OF, SHOULD LEAVE TO

11     AMEND BE GRANTED?

12            WE'VE HEARD YOUR HONOR'S COMMENTS THAT TYPICALLY IT IS,

13     AND THAT'S TRUE IN MOST CASES.

14            THE THING WE WANT TO CONSIDER IS, WHAT IS TEVRA'S PROFFER?

15     TEVRA HAS KNOWN THAT THE GERMAN DEFENDANTS WOULD CHALLENGE

16     PERSONAL JURISDICTION.  IT DIDN'T HAVE OUR SPECIFIC ARGUMENTS

17     UNTIL JULY -- EXCUSE ME -- JUNE, IN FAIRNESS.

18            BUT TEVRA SHOULD BE ASKED WHAT EXACTLY IT WOULD ALLEGE TO

19     OVERCOME THE HURDLES IDENTIFIED HERE, TO OVERCOME THE

20     DEFICIENCIES.

21            THE COURTS RECOGNIZE THAT YOUR HONOR HAS DISCRETION, AND

22     NOT EVERY CASE AUTOMATICALLY GRANTS LEAVE TO AMEND.

23                THE COURT:  THERE WAS ONE I DENIED.

24                MR. CALLAGY:  RIGHT, RIGHT.

25            AND THIS IS SO EVEN WHEN THE COURT, HAVING GIVEN THE
```

1      PARTIES THE BENEFIT OF A FIRST RULING, THERE'S NO PER SE RULE

2       THAT YOU HAVE TO DISMISS ONCE AND TRY IT AGAIN.

3            AND THE COURTS ARE MORE WILLING TO DISMISS WITH PREJUDICE

4       OR TO REQUIRE A SHOWING BY THE DEFENDANT AND ENGAGE IN THE

5       FUTILITY ANALYSIS IN CASES WHERE PERSONAL JURISDICTION IS AT

6       ISSUE, RECOGNIZING THE BURDENS OF LITIGATING, ESPECIALLY FOR AN

7       ENTITY, OR TWO ENTITIES IN THIS CASE, HEADQUARTERED OVERSEAS.

8            SO WE WOULD ASK YOUR HONOR TO CONSIDER THAT.

9            SOME CASES WILL DISMISS ON A 12(B)(2) BASIS WITH

10      PREJUDICE, EVEN WHILE ALLOWING LEAVE TO AMEND ON A 12(B)(6)

11      BASIS TO DOMESTIC ENTITIES, AND SO WE'D ASK YOUR HONOR TO

12      CONSIDER THAT HERE.  WE KNOW THERE'S INTERRELATION BETWEEN THE

13      TWO MOTIONS, BUT GIVEN THE WEAKNESS OF THE CLAIMS AGAINST THE

14      GERMAN DEFENDANTS, WE FEEL THAT'S THE PROPER REMEDY IN THIS

15      CASE.

16            THE COURT:  ALL RIGHT.  THANK YOU.

17            LET ME TURN THEN -- MR. OWEN, WILL YOU BE ARGUING THIS

18      ONE?

19            MR. OWEN:  I WILL.

20            BUT I REALLY DON'T WANT TO -- I KNOW THE COURT'S ON A

21      SCHEDULE, AND THE IMPLICATION IS CLEAR THAT, YOU KNOW, THE

22      COURT IS GOING TO DISMISS THE CASE APPARENTLY ON THE FIRST

23      MOTION TO DISMISS WITH LEAVE TO AMEND, AND IT WOULD ONLY MAKE

24      SENSE TO THEN DISMISS IT AS TO THE GERMAN -- IT'LL BE DISMISSED

25      AS TO THE GERMAN DEFENDANTS ALSO.

1       ANY PROBLEMS THE COURT HAS WITH THE ALLEGATIONS REGARDING

2   THE GERMAN DEFENDANTS WE WOULD HOPE TO CORRECT ON OUR SECOND

3   AMENDED COMPLAINT.

4       THE COURT:  OKAY.

5       MR. OWEN:  I WOULD ASK -- MR. CALLAGY POSED A

6   QUESTION, WHAT WOULD TEVRA SAY?  WHAT WOULD WE SAY?

7       I MEAN, WHAT IF THERE WAS SOME -- AMONG THE THINGS WE'RE

8   GOING TO SAY ARE -- YOU KNOW, WE CITED THE COURT TO 11

9   DIFFERENT GERMAN DEFENDANTS OF THE GMBH ENTITY, 11 OF THEM,

10  ENGAGED IN A DAILY BASIS ON THINGS THAT WE THINK GO DIRECTLY TO

11  THIS CASE, LIKE MAKING ARGUMENTS FOR WHAT THE PRICE INCREASES

12  WOULD BE, DISCUSSING POSSIBILITIES OF GENERIC COMPETITION.

13      BUT I WONDER WHAT IT WOULD BE LIKE IF THERE WAS SOME

14  SMOKING GUN DOCUMENT WHERE BAYER HAD REALLY SET OUT TO CREATE A

15  CONSPIRACY TO BLOCK GENERIC ENTRY, TO CREATE -- TO GO TO THE

16  RETAILERS AND SAY, LET'S BLOCK GENERIC ENTRY, NOT TO COMPETE

17  WITH GENERICS, BUT TO BLOCK GENERIC ENTRY.  WHAT IF THERE WAS A

18  SMOKING GUN DOCUMENT LIKE THAT AND WHAT IF THEY HAD GONE TO THE

19  RETAILERS WITH THAT?

20      THE COURT:  DON'T WE ALL DREAM ABOUT THOSE SMOKING

21  GUN DOCUMENTS?

22      MR. OWEN:  WELL, THERE IT IS BEGINNING ON A

23  SPREADSHEET BY ONE OF THE PEOPLE THAT WE'VE ASKED FOR AS A

24  CUSTODIAN (INDICATING).

25      HERE IT IS IN A POWERPOINT (INDICATING).  BAYER'S GOALS --

1    WE DIDN'T WRITE THIS DOCUMENT, BAYER DID.  BAYER'S GOALS,

2    NUMBER 1, BLOCK GENERIC ENTRY.

3            THE COURT:  YOU KNOW, AND IS THAT A -- I DON'T KNOW

4    WHICH BAYER ENTITY THAT COMES FROM.

5            MR. OWEN:  THIS ORIGINATED AT -- WITH THE U.S.

6    ENTITY, BUT WE THINK WE CAN SHOW THE GERMANS WERE QUITE AWARE

7    OF IT.

8        WHAT IF THEY THEN WENT TO THE RETAILERS?  WHAT IF THEY HAD

9    A RETAILER SUMMIT, AND WHEN THEY WENT TO THE RETAILERS, THEY

10   BROUGHT THEM INTO THE CONSPIRACY (INDICATING)?

11       WHAT IF THEY WENT TO THE RETAILERS AND THEY SAID, LET'S

12   BUILD A CONSENSUS, LET'S GAIN SUPPORT TO BLOCK GENERIC ENTRY

13   (INDICATING).

14       WHAT IF THESE DOCUMENTS ACTUALLY EXISTED?

15       WELL, THEY DO, AND MORE, AND THE COURT WILL SEE THEM IN A

16   SECOND AMENDED COMPLAINT.

17       SO SHOULD YOU LET THE GERMANS OUT WITH NO FURTHER

18   DISCOVERY?  WE'LL RESPECTFULLY SAY NO.

19       THERE'S NO POINT IN ME ARGUING THE MERITS OF THE MOTION TO

20   DISMISS.  THE COURT'S GOING TO DISMISS THE COMPLAINT.  WE HOPE

21   TO REPLEAD THE SECOND AMENDED COMPLAINT.

22       BUT LET ME JUST HIGHLIGHT WHERE THEIR MOTION TO DISMISS,

23   IN OUR VIEW, BEGINS AND ENDS.  WE THINK IT BEGINS AND ENDS IN

24   TWO AFFIDAVITS, ONE FOR THE AG ENTITY, ONE FOR THE GMBH ENTITY,

25   BOTH EXECUTED BY LEGAL STAFF AT THE RESPECTIVE ENTITIES, BOTH

1    OF WHICH SAY THAT BAYER, THEIR ENTITY, QUOTE, "DOES NOT HAVE

2    OPERATIONS IN THE UNITED STATES," ELLIPSING THAT, OKAY?

3         AND WE BELIEVE THAT IS DEMONSTRABLY FALSE, THAT THE 11

4    EMPLOYEES OF THE GERMAN ENTITY THAT WE CITED, NOT COUNTING THE

5    ONE WITH THE MISTAKEN BLOCK, THEY'RE ENGAGED IN ABSOLUTELY

6    DAILY CONTROL OF PRICING, SALES, AND MARKING IN THE

7    UNITED STATES TO SUCH AN EXTENT THAT ONE OF THEM,

8    CHRISTINA POLLACK, IS NOTED AS BEING IN STRATEGIC CONTROLLING,

9    STRATEGIC CONTROLLING, AND THEY COMPLAIN, AS WE CITED IN THE

10   BRIEF, THAT U.S. EMPLOYEES COMPLAINED ABOUT HOW MUCH THEY'RE

11   CONTROLLED BY THE GERMANS AND THAT THE GERMANS HAD PERFECT

12   KNOWLEDGE OF WHAT WAS GOING ON IN THE UNITED STATES THAT WE

13   CONTEND IS ILLEGAL.

14        WE ALSO THINK IT'S PATENTLY FALSE THAT THERE WERE NO

15   OPERATIONS IN THE UNITED STATES BECAUSE BAYER AG SOLD THOSE

16   NON-EXISTENT OPERATIONS FOR BILLIONS OF DOLLARS AS PART OF A

17   $7.6 BILLION DOLLAR CONTRACT, INCLUDING THE VERY DIVISION THAT

18   EXECUTED THESE CONTRACTS.

19        IN FACT, THE CONTRACTS ALL HAD TO BE CHANGED ACCORDING TO

20   THE SUCCESSION PARAGRAPH BECAUSE BAYER AG SOLD ITS U.S.

21   HEALTHCARE OPERATIONS, WHICH IT HAD THE RIGHT TO DO.

22        THE COURT:  SO I HAD UNDERSTOOD THAT ANIMAL HEALTH

23    WAS SOLD, BUT HEALTHCARE WAS AS WELL?

24        MR. OWEN:  WELL, YES.  THE -- THE ANIMAL HEALTH PART

25    OF HEALTHCARE WAS SOLD.

1          THE COURT:  OKAY.

2          MR. OWEN:  SO, FOR EXAMPLE, ABOUT TEN MILES FROM ME

3     ON SHAWNEE MISSION PARKWAY IN SHAWNEE, KANSAS USED TO BE THE

4     BIG BAYER ANIMAL HEALTH NATIONAL HEADQUARTERS, AND THEY TOOK

5     DOWN THE BAYER FLAG AND THEY RAN UP THE ELANCO FLAG.

6          IN DOING THIS $7 BILLION TRANSACTION, BAYER AG ADMITTED IN

7     WRITING, BY ITS CHIEF LEGAL COUNSEL, THAT IT IS ENGAGED IN

8     COMMERCE IN THE UNITED STATES OF AMERICA WITHIN THE MEANING OF

9     THE CLAYTON ACT, THE VERY ACT UPON WHICH THIS IS BASED.

10          SO WE THINK WE HAVE A LOT TO DISCOVER AND A LOT TO SAY IN

11    THE THIRD AMENDED COMPLAINT, AND I JUST WANTED TO FORESHADOW

12    SOME OF IT.

13          WHEN THEY TALK ABOUT GENERIC ENTRY, THERE'S A VERY

14    INTERESTING EXHIBIT, EXHIBIT J, THAT'S A DECLARATION OF ONE OF

15    THEIR MARKETERS, DAVID VAN BRUNT, AND IT READS ALMOST EXACTLY

16    LIKE OUR COMPLAINT IN TERMS OF MARKET DEFINITION, BREAKING OUT

17    VET, PET SPECIALTY, AND ONLINE.

18          IT READS ALMOST EXACTLY LIKE OUR COMPLAINT IN TERMS OF THE

19    DIFFERENCES BETWEEN THE FIPRONIL PRODUCTS WE'VE TALKED ABOUT

20    AND THE IMIDACLOPRID PRODUCTS THAT WE TALKED ABOUT, AND IT

21    READS ALMOST EXACTLY LIKE OUR COMPLAINT IN THE EFFECT OF

22    GENERIC ENTRY, EVEN CITING THE FIPRONIL GENERICS AGAINST

23    IMIDACLOPRID -- I'M SORRY -- AGAINST FRONTLINE.

24          SO ALL OF THESE DOCUMENTS WE'LL SEE AIRING IN THE THIRD --

25    IN THE SECOND AMENDED COMPLAINT.

1       IN THE MEANTIME, WE HEARD THE COURT LOUD AND CLEAR ABOUT

2    NARROWING DISCOVERY.  WE DID MEET, WE DID HAVE A MEETING WITH

3    MR. CALLAGY AND MR. ASIMOW LAST WEEK, BUT WE ALL AGREED WE HAD

4    CERTAIN DEADLINES -- THEY HAD ONE LAST WEEK, WE HAD ONE THIS

5    WEEK.  WHAT WE SAID IS LET'S KICK THEM ALL TO FRIDAY, THE

6    18TH --

7            THE COURT:  SURE.

8            MR. OWEN:  -- BECAUSE WE'LL HAVE MET WITH

9    JUDGE FREEMAN, WE EXPECT HER TO HAVE A RULING ON AT LEAST THE

10   FIRST MOTION TO DISMISS, AND WE'LL KNOW WHERE WE ARE.

11           THE COURT:  RIGHT.  SO THAT'S HELPFUL.

12           MR. OWEN:  THAT'S ALL I HAVE.

13           THE COURT:  LET ME ASK YOU A COUPLE QUESTIONS,

14   BECAUSE I REALLY APPRECIATE YOUR ACKNOWLEDGMENT THAT WE'RE

15   GOING TO GO IN THIS DIRECTION.

16       I WOULD -- I'M GOING TO ASK YOU TO DEVELOP A NARROWED

17   JURISDICTIONAL DISCOVERY PLAN.  LET ME TELL YOU ONE OF THE

18   TOUCH POINTS OF MY ANALYSIS OF IT.  "REASONABLE JURISDICTIONAL

19   DISCOVERY PLAN" IS THE SPEED AT WHICH I BELIEVE IT CAN BE

20   ACCOMPLISHED.  I KNOW IT'S KIND OF ROUGH JUSTICE, BUT

21   EFFICIENCY IS A REALLY IMPORTANT PART OF IT BECAUSE WE DON'T --

22   WE'RE NOT GOING TO WAIT UNTIL THE END OF THE CASE.  SO IT'S ONE

23   OF THE WAYS I EVALUATE IT.

24       I'M GOING TO ASK THAT YOU DEVELOP THIS NARROWED DISCOVERY

25   PLAN, AND I'M GOING TO ASK THAT YOU MEET AND CONFER WITH THE

1    DEFENDANTS FIRST IN CASE YOU CAN REASONABLY FURTHER NARROW IT

2    BEFORE YOU PRESENT IT TO ME.

3         AND THEN IF IT'S NOT AGREED TO -- AND IT'S FINE THAT IT'S

4    NOT AGREED TO, I RECOGNIZE THAT -- I WILL ALLOW YOU TO, AFTER

5    YOU GET MY ORDER -- OR MAYBE YOU WANT TO JUST MOVE RIGHT ALONG.

6    MAYBE YOU SHOULD JUST MOVE RIGHT ALONG BASED ON WHAT WE'VE SAID

7    TODAY.

8         I WILL ALLOW YOU TO GIVE ME AN EXHIBIT WHICH IS THE

9    REQUESTED DISCOVERY, AND EACH OF YOU MAY GIVE ME A THREE PAGE

10   BRIEF -- THAT'S A REGULAR BRIEF, IT'S NOT A LETTER, I DON'T

11   READ ANYTHING THAT'S SINGLE SPACED -- A THREE PAGE BRIEF, THEY

12   CAN BE SIMULTANEOUS BECAUSE YOU'VE MET AND CONFERRED, THAT WILL

13   TELL ME YOUR POSITION ON WHAT IS WRONG OR RIGHT WITH THE

14   DISCOVERY PLAN.

15        AND I'D LIKE -- I WILL NEED AN ESTIMATE FROM EACH OF YOU

16   ABOUT HOW MUCH TIME IT WILL TAKE TO COMPLETE THE REQUESTED

17   DISCOVERY.  I HAVE -- I HAVE SOME IDEAS, BUT THIS -- YOU KNOW

18   BETTER THAN I DO.

19        AND THEN THAT BRINGS ME TO THE POINT -- AND I THINK I'M

20   GOING TO DEFER TO YOUR DISCOVERY PLAN, MR. OWEN.  I -- WE'VE

21   TALKED ALL ALONG ABOUT THERE BEING A SINGLE AMENDMENT TO THE

22   COMPLAINT WITH BOTH MOTIONS INCORPORATED.

23        AND ALTHOUGH YOU'LL HAVE MY ORDER ON THE FIRST MOTION TO

24   DISMISS I'M HOPING BY FRIDAY, BUT CERTAINLY EARLY NEXT WEEK,

25   LET ME KNOW HOW MUCH TIME YOU NEED TO FILE AN AMENDED

1      COMPLAINT, AND YOU MAY ACTUALLY SAY TO ME YOU'D LIKE A STATUS

2      CONFERENCE ON THAT ONCE THE DISCOVERY HAS KICKED OFF, WHICH IS

3      FINE.

4           BUT I NEED -- YOU KNOW, IF I GIVE LEAVE TO AMEND, THERE'S

5      GOT TO BE SOME DEADLINE, AND I DON'T KNOW WHAT THAT WILL BE, SO

6      I NEED YOU TO LAY ALL OF THAT OUT FOR ME.

7           AND, YOU KNOW, IT COULD BE THAT IT'S SIX MONTHS BEFORE YOU

8      FILE AN AMENDED COMPLAINT IF THAT'S --

9           MR. OWEN:  YOUR HONOR, I SADLY MUST CONCUR THAT

10     THAT'S PROBABLY THE CASE, THAT DISCOVERY AS TO GERMAN ENTITIES

11     UNFORTUNATELY HAS TO GO THROUGH A LOT OF ADDITIONAL HOOPS

12     BECAUSE OF PRIVACY THINGS.

13          THE COURT:  UM-HUM.

14          MR. OWEN:  AND I WOULD BE SURPRISED IF WE'RE READY TO

15     FILE AN AMENDED COMPLAINT IN SIX MONTHS, I MEAN SOONER THAN SIX

16     MONTHS.

17          THE COURT:  AND I UNDERSTAND THAT.

18          MR. OWEN:  THAT, OF COURSE, DESTROYS MY MOST

19     CHERISHED POSSESSION, WHICH WAS THE SEPTEMBER 2021 TRIAL DATE.

20          THE COURT:  YEAH.

21          MR. OWEN:  AND WE HEARD YOUR HONOR LOUD AND CLEAR

22     THAT YOUR CALENDAR IS SO CRAMMED WITH EVERYBODY THAT WE'RE

23     LOOKING TWO YEARS OUT.

24          THE COURT:  YOU COULD BE.

25          MR. OWEN:  I WOULD RESPECTFULLY SUGGEST, ALTHOUGH

1    "BEG" MIGHT BE A BETTER WORD, THAT YOUR HONOR LOOK AT HER

2    CALENDAR, UNDERSTANDING THAT YOUR HONOR MAY CHOOSE TO DISMISS

3    THE WHOLE CASE AT SOME POINT, WE UNDERSTAND THAT NOTHING IS

4    CERTAIN, BUT IF WE COULD GET A NEW TRIAL DATE, WE UNDERSTAND

5    IT'S GOING TO BE A LONG TIME.

6        AS YOU KNOW, TRIAL DATES MOVE CASES, THEY MOVE DISCOVERY.

7            THE COURT:  I AGREE WITH THAT.

8            MR. OWEN:  THEY MOVE SETTLEMENT IF THEY'RE EVER GOING

9    TO HAPPEN.

10       AND ALTHOUGH WE'RE SAD TO LOSE OUR ORIGINAL ONE, WE'D SURE

11   LIKE TO HAVE ANOTHER ONE AT THE EARLIEST POSSIBLE CONVENIENCE.

12       AND IF YOU PLAN THAT WE WERE TO HAVE THE COMPLAINT AMENDED

13   SIX MONTHS FROM NOW AND THEN TRY IT A YEAR AND A HALF FROM THEN

14   I THINK IS PROBABLY A TYPICAL TIME FROM WHICH THE PLEADINGS ARE

15   SETTLED.

16       I DON'T LIKE THE SOUND OF THAT, BUT IT'S -- WE'VE ALL BEEN

17   INVOLVED IN THIS ENOUGH TO KNOW THAT THAT'S REALISTIC.

18           THE COURT:  ALL RIGHT.  WELL, MR. ASIMOW OR

19   MR. CALLAGY, ANY COMMENT ABOUT TRIAL DATES?

20           MR. ASIMOW:  LET ME SPEAK TO THAT, YOUR HONOR.

21       SO I WAS GOING TO ASK FOR A CASE MANAGEMENT CONFERENCE

22   BASED ON WHERE IT LOOKED LIKE THIS WAS GOING, AND I DO AGREE IT

23   MAKES SENSE TO HAVE ONE AMENDED COMPLAINT.  SO IF THERE NEEDS

24   TO BE JURISDICTIONAL DISCOVERY, THAT WOULD HAVE TO BE THE NEXT

25   PHASE.

1    BUT WHAT WOULD -- I THINK WHAT EVERYBODY IS ASSUMING, BUT

2    I WANT TO CONFIRM, IS THAT OTHER MERITS DISCOVERY IS NOT GOING

3    TO HAPPEN IN THAT INTERVAL.

4    WE PRODUCE DOCUMENTS.  THE REAL BURDEN, IT WOULD BE

5    DEPOSITIONS.  THE COURT HAD PREVIOUSLY SAID DEPOSITIONS

6    WOULDN'T GO FORWARD UNTIL WE HAD EITHER A VIABLE COMPLAINT OR

7    FURTHER ORDER OF THE COURT.

8    SO I WOULD SUGGEST THAT WHAT MAKES SENSE HERE IS IF WE'RE

9    GOING TO HAVE JURISDICTIONAL DISCOVERY, WE HAVE -- WE DO THAT

10   THIS CALENDAR YEAR INTO NEXT YEAR; WE GET A NEW COMPLAINT THAT

11   ADDRESSES ALL THE ISSUES THAT WERE RAISED IN BOTH OF THE

12   MOTIONS THAT WE BROUGHT; WE BRING A MOTION TO DISMISS THAT IF

13   APPROPRIATE, WHICH I HIGHLY SUSPECT WILL BE WHAT WE DO; WE'LL

14   GET THE PLEADINGS SETTLED BEFORE WE GET INTO FURTHER BURDENSOME

15   AND EXPENSIVE DISCOVERY.

16   AS THE COURT'S AWARE, WE PRODUCED DOCUMENTS FOR TEN

17   CUSTODIANS AT BAYER HEALTHCARE.  WE HAVE MADE A PROPOSAL TO

18   TEVRA TO ADD A FEW CUSTODIANS THAT WE KNOW THEY'RE INTERESTED

19   IN, CONSISTENT WITH COMMENTS THE COURT MADE AT OUR STATUS

20   CONFERENCE.

21   BUT THAT SEEMS LIKE A REASONABLE WAY FOR US TO PROCEED.

22   AND I THINK I'M LARGELY ON THE SAME PAGE HERE AS MR. OWEN,

23   POTENTIALLY WITH THE EXCEPTION OF WHAT MERITS DISCOVERY CAN

24   HAPPEN WHILE WE'RE STILL WORKING ON SETTLING THE PLEADINGS.

25   SO THAT'S WHAT I WANTED TO SAY.

```
1              THE COURT:  MR. ASIMOW, I HAVE TO TELL YOU THAT I
2      THINK YOUR COMMENTS ARE WELL TAKEN, AND THAT MAY CAUSE ME TO
3      HAVE MR. OWEN AMEND THE COMPLAINT PURSUANT TO THE 12(B)(6)
4      ORDER THAT I'M GOING TO ISSUE, AND THEN SEPARATELY ALLOW HIM TO
5      AMEND LATER ON THE GERMAN DEFENDANTS, THEREBY ONLY HOLDING
6      DISCOVERY ON THE GERMAN DEFENDANTS, BECAUSE THIS CASE WILL
7      NEVER GO FORWARD IF I HAVE TO WAIT.
8          MR. OWEN -- AND MAYBE WE DO NEED A CMC ON THAT ISSUE AFTER
9      YOU SEE MY ORDER.
10         BUT MR. OWEN, I DON'T -- I DON'T REALLY -- I'M SURE YOU
11     DON'T WANT TO WAIT ON ALL YOUR DISCOVERY UNTIL THE -- FOR SIX
12     MONTHS OR LONGER.
13             MR. OWEN:  I WOULD BE HAPPY TO DO ANYTHING TO MOVE
14      THE CASE FORWARD QUICKLY, ANYTHING.
15             THE COURT:  ALL RIGHT.  IF I WERE --
16             MR. OWEN:  LET ME --
17             THE COURT:  LET ME JUST SAY, IF I WERE TO ASK YOU TO
18      AMEND THE COMPLAINT BASED ON THE DEFICIENCIES I'LL BE FINDING
19      FROM THE INITIAL MOTION TO DISMISS, HOW MUCH TIME FROM THE DATE
20      I ISSUE THE ORDER WOULD YOU NEED?
21             MR. OWEN:  THREE MONTHS.
22             THE COURT:  SO THAT'S --
23             MR. OWEN:  I THINK THREE MONTHS.  I THINK 90 DAYS.
24             THE COURT:  NINETY DAYS.
25             MR. OWEN:  AND I WILL TELL YOU PART OF THE REASON FOR
```

1    THAT.  BOTH, BOTH PARTIES HAVE GIVEN EACH OTHER NOTICE OF THE

2    EXISTENCE OF THEIR EXPERTS AND THE NEED TO FILE, TO DO -- TO

3    PROVIDE DOCUMENTS TO EXPERTS.  THEY'VE PROVIDED DOCUMENTS TO

4    THEIR EXPERTS, WE'VE PROVIDED DOCUMENTS TO OURS.

5         IN DOING SO, WE DISCOVERED THAT SOME CRITICAL DOCUMENTS

6    THAT WE WOULD LIKE TO USE IN THE AMENDED COMPLAINT NOW STILL

7    HAVEN'T BEEN PRODUCED, AND WE STILL HAVE SOME DISCOVERY TO

8    REALLY FIGHT ABOUT, ABOUT THE STUFF THAT'S ALREADY BEEN SERVED

9    AND ALREADY BEEN PARTIALLY RESPONDED TO, AND WE NEED TO GET --

10   BY ALL RIGHTS, WE OUGHT TO BE ABLE TO AT LEAST CLOSE THOSE

11   LOOPS BEFORE WE HAVE TO FINISH OUR RESPONSE.

12        THE COURT:  SO I --

13        MR. OWEN:  BUT THREE MONTHS WOULD BE SUFFICIENT.

14        THE COURT:  REMIND ME WHAT THE HOLD ON DISCOVERY IS

15   AT THIS POINT.

16        MR. OWEN:  SIMPLY THE TRANSACTIONAL DATA THAT WE

17   REQUESTED IN RFP NUMBER 4 WAS NOT PRODUCED, AND I SPOKE TO

18   MR. -- MS. CLEMONS BRIEFLY ABOUT IT LAST WEEK.

19        AND THE PARTIES, I ASSURE YOU, YOUR HONOR, IN SPITE OF THE

20   WAY WE CLASH IN FRONT OF YOU, WE REALLY DO WORK WELL TOGETHER

21   AND WE REALLY DO MAKE EVERY EFFORT TO KEEP IT OUT OF THE

22   COURTS, TO KEEP FROM CLOGGING UP MAGISTRATE DEMARCHI'S DOCKET

23   WITH IT, BUT WE MAY HAVE TO HAVE ANOTHER ROUND THERE.

24        MR. ASIMOW:  YOUR HONOR, THE STATUS IS THE COURT

25   ALLOWED DOCUMENT DISCOVERY TO GO FORWARD; WE PRODUCED IT, AS I

1    SAID, AS TO TEN CUSTODIANS; AND THERE'S BEEN A HOLD ON

2    DEPOSITIONS THAT REMAINS IN PLACE.

3        MR. OWEN HAS RAISED ISSUES ABOUT OUR DATA PRODUCTION AND

4    WE WILL MEET AND CONFER WITH HIM ON THAT, AND WE AGREE THAT

5    THAT CAN GO FORWARD AND WE CAN -- WE WILL ATTEMPT TO RESOLVE

6    THAT AND I HOPE WE DON'T HAVE TO GO TO THE MAGISTRATE.  I

7    EXPECT THAT WE WILL NOT.

8        SO THAT'S -- I DON'T OBJECT TO THAT.

9        WHAT I REALLY ASK IS THAT THE HOLD ON DEPOSITIONS REMAIN

10   IN PLACE UNTIL WE HAVE A VIABLE COMPLAINT.

11          THE COURT:  ALL RIGHT.  YOU KNOW, I DON'T NEED TO

12   DIVIDE THIS UP.  IF YOU ARE GETTING DISCOVERY ON DOCUMENTS, I

13   DON'T -- AND THE TRIAL DATE IS -- YOU'RE REQUESTING THE TRIAL

14   DATE, MR. OWEN, TWO YEARS FROM TODAY ESSENTIALLY.  I THINK THEN

15   THAT WE'LL KEEP THOSE DISCOVERY -- THE SLOW DOWN ON DISCOVERY

16   IN PLACE.  I THINK THAT MAKES SENSE.

17       AND I'M NOT GOING TO INVITE TWO SEPARATE AMENDED

18   COMPLAINTS, ESPECIALLY RECOGNIZING THAT YOU REASONABLY REQUEST

19   90 DAYS.  THAT'S NOT -- IF YOU SAID I'M READY TO FILE IN TWO

20   WEEKS, THAT WOULD BE SOMETHING ELSE.  BUT YOU HAVEN'T EVEN SEEN

21   MY ORDER, SO THERE'S NO WAY YOU COULD HAVE GOTTEN STARTED YET.

22       ALL RIGHT.  THAT HELPS ME ENORMOUSLY.  I THINK WE KNOW HOW

23   WE'RE GOING.

24       MR. ASIMOW, IF AN ISSUE COMES UP FOR FURTHER CASE

25   MANAGEMENT, I INVITE YOU TO REQUEST IT.  ALL I ASK FOR IS A

1    JOINT STATEMENT LAYING OUT THE ISSUES AND YOUR POSITIONS AND TO

2    CLEARLY REQUEST A CASE MANAGEMENT CONFERENCE SO THAT I -- SO

3    THAT IT GETS FLAGGED.  AND I USUALLY CAN SET THAT IN A COUPLE

4    OF DAYS, SO YOU'RE NOT LOOKING AT MY OTHER CALENDAR THAT'S SO

5    FOREBODING.  YOU KNOW, WHEN THERE ARE VERY TARGETED ISSUES, I

6    JUST TRY TO DEAL WITH IT RIGHT AWAY, AND SINCE WE'RE DOING IT

7    BY ZOOM, THAT MAKES IT EASY FOR EVERYBODY.

8        ALL RIGHT.  I'M HOPING WE CAN MOVE ALONG, AND I THINK THAT

9    AMENDING ON THE -- GETTING SOME JURISDICTIONAL DISCOVERY THAT

10   IS REASONABLE I THINK REALLY MAKES SENSE HERE SO THAT THERE'S A

11   FAIR OPPORTUNITY FOR THE PLAINTIFFS TO -- FOR TEVRA TO MAKE ITS

12   CLAIM.

13       MR. ASIMOW:  YOUR HONOR, CAN I -- IF YOU WOULD

14   INDULGE ME, JUST ONE VERY QUICK POINT ABOUT JURISDICTIONAL

15   DISCOVERY, WHICH I WOULD ASK THE COURT, WHEN IT LOOKS AT THE

16   BRIEFING AND ISSUES ITS ORDER, TO CONSIDER BAYER AG AND

17   BAYER ANIMAL HEALTH GMBH SEPARATELY.

18       THE COURT:  I ALWAYS CONSIDER THEM SEPARATELY.

19       I GUESS THE LAST THING I NEED IS HOW MUCH TIME DO YOU WANT

20   TO PROVIDE ME WITH A DISCOVERY PLAN AND YOUR BRIEFING ON IT?

21   I'M NOT HOLDING YOU TO ANYTHING TIGHT.  I JUST WANT A DEADLINE.

22       MR. OWEN:  LET US TALK ABOUT IT NEXT WEEK AND THEN

23   AGREE TO DISAGREE, AND THEN WE MIGHT SUBMIT SIMULTANEOUS

24   BRIEFS, SAY, BY TWO WEEKS FROM TOMORROW?

25       THE COURT:  TWO WEEKS FROM TOMORROW.  THAT'S --

1    MR. OWEN:  FRIDAY, TWO WEEKS FROM TOMORROW.  SO WE'LL

2    MEET AND ARGUE NEXT WEEK AND THEN WE'LL SUBMIT ANY REMAINING

3    DISCUSSIONS BY, SAY, TWO WEEKS FROM TOMORROW.  LET'S JUST DO IT

4    SIMULTANEOUSLY SO WE DON'T HAVE --

5    THE COURT:  I THINK THAT MAKES SENSE SINCE YOU'RE

6    GOING TO HAVE THE MEET AND CONFER, AND THAT WOULD BE

7    SEPTEMBER 25 WOULD BE THE DEADLINE FOR THOSE THREE PAGE BRIEFS.

8    AND THE DISCOVERY PLAN ITSELF WILL BE A SEPARATE DOCUMENT.

9    I'M NOT --

10   MR. OWEN:  MR. ASIMOW, IS THERE A TIME OF DAY YOU

11   WOULD AGREE TO SUBMIT SIMULTANEOUSLY?  NOON PACIFIC MAYBE?

12   MR. ASIMOW:  MR. OWEN, WHEN WOULD YOU HAVE YOUR DRAFT

13   JURISDICTIONAL DISCOVERY TO US?  I THINK -- THAT MAY BE A

14   LITTLE COMPRESSED.  WE NEED TO SEE THE COURT'S ORDER; AND THEN

15   YOU NEED TO TELL US WHAT JURISDICTIONAL DISCOVERY YOU WANT; WE

16   NEED TO CONSIDER THAT.

17   SO I'M HAPPY TO EXPEDITE IT, BUT I DON'T -- I DON'T KNOW

18   WHEN WE'RE GOING TO HAVE THE ORDER, SO --

19   MR. OWEN:  I'VE GONE OFF --

20   MR. ASIMOW:  BUT THAT MAY BE A LITTLE SHORT.

21   MR. OWEN:  I'VE GONE OFF THE RAILS, YOUR HONOR.  I'M

22   SORRY.  WE REALLY CAN'T, I GUESS, MEET AND CONFER.  WE CAN'T

23   DRAFT IT UNTIL WE'VE SEEN THE COURT'S ORDER.

24   THE COURT:  SO YOU WANT TWO WEEKS FROM THE DATE OF MY

25   ORDER?

1          MR. OWEN:  THERE YOU GO.

2          MR. ASIMOW:  THAT'S FINE.

3          MR. OWEN:  AND WE WILL -- WE WILL GET OUR SHORTENED

4     DISCOVERY TO MR. ASIMOW WITH BELLS ON, AND THEN WITHIN TWO

5     WEEKS WE'LL HAVE TEED UP THE THREE PAGE BRIEFS.

6          THE COURT:  GOT IT.

7          MR. OWEN:  THERE IS ONE THING THE COURT COULD DO TO

8     HELP THIS MOVE ALONG.

9          AT THE END OF THE LAST HEARING, WE HAD A LITTLE DISCUSSION

10    BACK AND FORTH AS TO WHETHER BAYER WOULD ACTUALLY OFFER TO

11    ANSWER SOME DISCOVERY IF WE NARROWED IT, OR IF BAYER WAS

12    OFFERING TO ANSWER NOTHING BECAUSE THEY DIDN'T THINK WE MADE

13    THE THRESHOLD SHOWING, AND MR. ASIMOW CLARIFIED THEY DIDN'T

14    THINK WE MADE THE THRESHOLD SHOWING.

15         THE COURT COULD DIRECT US, EITHER HERE TODAY OR IN ITS

16    ORDER, THAT THERE WILL BE SOME DISCOVERY ALLOWED.

17         THE COURT:  WELL, I THINK I'VE MADE THAT CLEAR, THAT

18    I WILL ALLOW REASONABLE JURISDICTIONAL DISCOVERY.  IF YOU

19    PRESENT ME A PLAN THAT HAS NOTHING THAT'S REASONABLE, THAT'S

20    THE WAY IT GOES.

21         MR. OWEN:  RIGHT.

22         THE COURT:  BUT I -- MR. OWEN, I HAVE EVERY

23    CONFIDENCE YOU'LL GIVE ME SOMETHING I CAN GRAB ONTO.  THAT'S

24    WHY I WANT YOU TO MEET AND CONFER, BECAUSE I THINK YOU ARE OVER

25    THE THRESHOLD OF WHETHER OR NOT THERE WILL BE JURISDICTIONAL

1    DISCOVERY.

2          SO I'M HOPING, WHEN YOU GIVE YOUR PLAN, THAT YOU AND

3    MR. ASIMOW CAN TAKE -- IF YOU HAVE TEN ITEMS, THAT YOU CAN

4    CHECK OFF FIVE THAT THE DEFENDANTS ARE WILLING TO DO AND YOU

5    LEAVE ME TO REFEREE A FIGHT OVER FEWER.  AND TEN MAY BE TOO

6    MUCH AND MAYBE IT'S GOING TO BE THREE AND WE'LL SEE.

7          BUT I THINK YOU -- I THINK YOU DO UNDERSTAND THAT YOU'RE

8    OVER THAT THRESHOLD NOW.

9              MR. OWEN:  ALL RIGHT.  THANK YOU, YOUR HONOR.

10              THE COURT:  THAT SHOULD BE HELPFUL.

11    ALL RIGHT.  I REALLY APPRECIATE IT.  THANK YOU.

12          AND I'LL TRY TO GET THIS ORDER OUT BECAUSE IT IS GOING TO

13    BE FAIRLY PERFUNCTORY SINCE I'M GIVING YOU LEAVE TO AMEND AND I

14    THINK MOVING THIS ALONG MAKES SENSE.

15          ALL RIGHT.  THANK YOU.

16              MR. OWEN:  THANK YOU, YOUR HONOR.

17              MR. ASIMOW:  THANK YOU, YOUR HONOR.

18              MR. CALLAGY:  THANK YOU, YOUR HONOR.

19          (THE PROCEEDINGS WERE CONCLUDED AT 10:29 A.M.)

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18       DATED:  SEPTEMBER 21, 2020

19

20

21

22

23

24

25