DANIEL B. ASIMOW (Bar No. 165661)
daniel.asimow@arnoldporter.com
SEAN M. CALLAGY (Bar No. 255230)
sean.callagy@arnoldporter.com
ANDREW S. HANNEMANN (Bar No. 322400)
andrew.hannemann@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

SONIA K. PFAFFENROTH (Bar No. 223984)
sonia.pfaffenroth@arnoldporter.com
LAURA S. SHORES (appearance *pro hac vice*)
laura.shores@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone:     202.942.5000
Facsimile:     202.942.5999

Attorneys for Defendant BAYER HEALTHCARE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVRA BRANDS, LLC,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BAYER HEALTHCARE LLC,<br><br>                    Defendant. | Case No.:  5:19-cv-04312-BLF<br><br>Action Filed:  July 26, 2019<br><br>**BAYER HEALTHCARE LLC'S ANSWER TO SECOND AMENDED COMPLAINT**<br><br>The Honorable Beth Labson Freeman |

Defendant Bayer HealthCare LLC ("BHC")[1] answers Plaintiff Tevra Brands, LLC's ("Tevra") Second Amended Complaint ("SAC") as follows:

With regard to the introductory section of Tevra's SAC, BHC notes that the Court dismissed the allegations against Bayer Animal Health GmbH ("BAH GmbH") in its January 6, 2022 order, and thus BAH GmbH is no longer a defendant in this action.[2]  Tevra also correctly notes that the SAC does not include claims against Bayer AG.  The remainder of Tevra's allegations in its introductory section set forth legal conclusions for which no response is required.  To the extent a response is required, BHC will address these allegations below in response to the specific allegations contained in Paragraphs 1–233 of the SAC.

## NATURE OF ACTION

1.      BHC admits that Tevra competes with BHC and denies that Tevra's generic alternatives are more effective than BHC's imidacloprid topical products.  Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 1.  The allegations regarding Bayer Animal Health GmbH ("BAH GmbH") require no response because BAH GmbH is no longer a defendant in this action.

2.      BHC admits that it sells "squeeze-on" imidacloprid topical flea and tick treatments for dogs and cats, which are purchased by retailers, distributors, veterinarians, and consumers in the United States.  BHC admits that its brands of imidacloprid topicals include Advantage and Advantix, which have been sold in the U.S. under brand names including Advantage®, Advantage® II, K9 Advantix®, and K9 Advantix® II.  BHC denies the remaining allegations in Paragraph 2.

3.      BHC admits that Tevra makes generic imidacloprid topicals and denies that Tevra's imidacloprid topicals are more effective than BHC's imidacloprid topicals.  Tevra's allegations

---

[1] This Answer is filed on behalf of BHC, which is the sole remaining named defendant.  However, as noted in BHC's Corporate Disclosure Statement (ECF 52), BHC's parent company, Bayer AG, entered into an agreement in August 2019 with Elanco Animal Health Inc. for the sale of Bayer's Animal Health business to Elanco Animal Health Inc.  That transaction closed in 2020.

[2] The SAC defines the term "Bayer" to include both BHC and BAH GmbH.  However, since the Court dismissed the allegations against BAH GmbH in its January 6, 2022 order, BHC responds only as to itself when the SAC uses the umbrella term "Bayer."

regarding the relevant antitrust market set forth legal conclusions for which no response is required, and BHC denies the remaining allegations in the final sentence of Paragraph 3.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3, and therefore denies them.

4.      Tevra's allegations in the first sentence of Paragraph 4 regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 4.

5.      Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 5.

## PARTIES

6.      BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies them.

7.      BHC notes that the fourth sentence of Paragraph 7 attempts to characterize the business that is "relevant to this action" and denies the allegations in the fourth sentence of Paragraph 7 on the basis that they are vague and ambiguous.  BHC admits the remaining allegations in Paragraph 7.

8.      The allegations in Paragraph 8, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.

9.      The allegations in Paragraph 9 that pertain to BAH GmbH require no response because BAH GmbH is no longer a defendant in this action.  BHC denies that BAH GmbH and BHC are "affiliated companies under common control."  BAH GmbH is a wholly owned subsidiary of Elanco Animal Health GmbH, which is a wholly owned subsidiary of Elanco Animal Health Inc. BHC is a wholly owned subsidiary of Bayer AG, which entered into an agreement in 2019 with Elanco Animal Health Inc. for the sale of the Bayer Animal Health business to Elanco Animal Health Inc.  BHC admits that it previously licensed a patent covering an imidacloprid topical product from another entity and otherwise denies the allegations in the second sentence of Paragraph 9.  BHC objects to BAH GmbH and BHC being collectively referred to as "Bayer" and responds only as to itself.  *See supra* at n.2.

**JURISDICTION AND VENUE**

10.     BHC does not dispute subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a) over the subject matter as currently pleaded.  BHC admits that Tevra purports to state claims and seeks relief under Sections 3, 4 and 16 of the Clayton Act, 15 U.S.C. §§ 14, 15 and 26, as well as Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  BHC otherwise denies the allegations in Paragraph 10.

11.     BHC does not dispute that the Court has personal jurisdiction over BHC in this case.  BHC admits that it transacted business in the United States, including in California, that it sold imidacloprid products to retailers in the United States, and that it researched, developed, sold, shipped, and/or delivered imidacloprid topicals in the United States.  Tevra's allegations regarding anticompetitive conduct set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 11.

12.     The allegations in Paragraph 12 that pertain to BAH GmbH require no response because BAH GmbH is no longer a defendant in this action.  BHC does not dispute that the Court has personal jurisdiction over BHC in this case and otherwise denies the allegations in Paragraph 12.

13.     The allegations in Paragraph 13, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations are directed at BHC, BHC admits that it sold a product named Defense Care at PetSmart and otherwise denies the allegations in Paragraph 13.

14.     BHC does not dispute venue in this District and does not dispute that the Court has personal jurisdiction over BHC.  BHC otherwise denies the allegations in Paragraph 14.

**FACTS COMMON TO ALL COUNTS**

**A.  The Relevant Antitrust Market[3]**

15.     The allegations in Paragraph 15 regarding the relevant antitrust market set forth a legal conclusion for which no response is required.  BHC otherwise denies the allegations in

---

[3] BHC has reproduced Tevra's headings for purposes of organization and clarity.  However, in reproducing Tevra's headings, BHC does not admit the truthfulness of Tevra's headings, allegations, or characterizations.

Paragraph 15.

16.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of Paragraph 16, and therefore denies them.  The allegations in the final sentence of Paragraph 16 set forth a legal conclusion for which no response is required.

17.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore denies them.

### 1. The Product Market

18.     The allegations in Paragraph 18 regarding the relevant product market set forth a legal conclusion for which no response is required.  The documents referenced in Section A.1.a, Section A.1.c-A.1.d, and Section A.1.e-A.1.g speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.  BHC otherwise denies the allegations in Paragraph 18.

### a. Economic substitutes and cross-elasticity of demand

19.     The allegations in the first and second sentences of Paragraph 19 set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19, and therefore denies them.

20.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.

21.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.

22.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.

24.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

25.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.

       **b.   Single-product markets for pharmaceuticals and chemicals**

26.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 26, and therefore denies them.  The remaining allegations in Paragraph 26 set forth legal conclusions for which no response is required.

27.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 27, and therefore denies them.  The remaining allegations in Paragraph 27 set forth legal conclusions for which no response is required.

       **c.   Defining relevant antitrust markets using the Hypothetical Monopolist Test**

28.     The allegations in Paragraph 28 set forth legal conclusions for which no response is required.

29.     The allegations in Paragraph 29 set forth a legal conclusion for which no response is required.

30.     The allegations in Paragraph 30 set forth a legal conclusion for which no response is required.

31.     The allegations in Paragraph 31 set forth legal conclusions for which no response is required.

32.     The allegations in Paragraph 32 set forth legal conclusions for which no response is required.

33.     BHC notes that Tevra cites the Horizontal Merger Guidelines.  That document speaks for itself, and BHC denies the allegations in Paragraph 33 to the extent they are inconsistent with that document.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33, and therefore denies them.

34.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 34, and therefore denies them.  The remaining allegations in Paragraph 34 set forth legal conclusions for which no response is required.

35.     BHC notes that Tevra cites the Horizontal Merger Guidelines.  That document speaks for itself, and BHC denies the allegations in Paragraph 35 to the extent they are inconsistent with that document.  The remaining allegations in Paragraph 35 set forth a legal conclusion for

1    which no response is required.

2       36.    BHC admits that it monitors the performance of fipronil topicals such as Frontline,

3    non-topical imidacloprid products such as Seresto flea collars, and Advantus soft chews.  The

4    allegations in the final sentence of Paragraph 36 set forth a legal conclusion for which no response

5    is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

6    remaining allegations in Paragraph 36, and therefore denies them.

7       37.    BHC admits that other flea and tick treatments exist, such as sprays, shampoos, and

8    drugs available only by prescription.  The remaining allegations in Paragraph 37 set forth legal

9    conclusions for which no response is required.

10      38.    The allegations in Paragraph 38 set forth legal conclusions for which no response is

11   required.

12          **d.  Application of the Hypothetical Monopolist Test to Several of Bayer's documents
            and datasets**

13

14      39.    The allegations in Paragraph 39 regarding the relevant antitrust market set forth legal

15   conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph

16   39.

17          **i.   Bayer documents showing significant price increases from between 2011 and
            2016, including the PetCo dataset**

18

19      40.    The allegation that BHC's alleged price increases were "both significant and non-

20   transitory within the meaning of SSNIP" sets forth a legal conclusion for which no response is

21   required.  The documents cited in Paragraph 40 speak for themselves, and BHC otherwise denies

22   Tevra's characterizations of those documents.  BHC lacks knowledge or information sufficient to

23   form a belief as to the truth of the remaining allegations in Paragraph 40, and therefore denies them.

24      41.    BHC admits that a March 2017 Strategic Leadership Team meeting was held in

25   Neuss, Germany.  The document in question presented at that meeting speaks for itself, and BHC

26   otherwise denies Tevra's characterizations of that document.  The second, third, and final sentences

27   of Paragraph 41 set forth legal conclusions for which no response is required.  BHC lacks

28   knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 41, and therefore denies them.

42.     The allegations in the second sentence of Paragraph 42 set forth legal conclusions for which no response is required.  The documents referenced in the third sentence of Paragraph 42 speak for themselves, and BHC otherwise lacks knowledge or information sufficient to form a belief as to the content of those documents.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42, and therefore denies them.

43.     The allegations in the first sentence of Paragraph 43 regarding the relevant antitrust market set forth legal conclusions for which no response is required, and BHC otherwise denies the allegations in the first sentence of Paragraph 43.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43, and therefore denies them.

44.     BHC denies that fipronil topicals and certain non-topical flea and tick treatments are not strong substitutes for BHC's imidacloprid topical products.  The remaining allegations in Paragraph 44 regarding the relevant antitrust market set forth legal conclusions for which no response is required.

**ii.     Bayer documents relating to generic price differentials**

45.     The allegations in the first sentence of Paragraph 45 set forth legal conclusions for which no response is required.  The document(s) referenced in the second and third sentences of Paragraph 45 speak for themselves, and BHC otherwise lacks knowledge or information sufficient to form a belief as to the content of those documents.

46.     BHC lacks knowledge or information sufficient to form a belief as to the price differential between K9 Advantix® and Frontline.  The remainder of the allegations in Paragraph 46 set forth legal conclusions for which no response is required.

47.     The document cited in the second and third sentences of Paragraph 47 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47, and therefore denies them.

48.     The allegations regarding the relevant antitrust market and the allegations in the final sentence of Paragraph 48 set forth legal conclusions for which no response is required.  BHC lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48, and therefore denies them.

49.     Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  The documents cited in the final sentence of Paragraph 49 speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49, and therefore denies them.

50.     The allegations in the final sentence of Paragraph 50 and Tevra's allegation that BHC engaged in a multi-faceted strategy to "block" generic competition set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50, and therefore denies them.

> **iii.    Several Bayer documents contain data to support direct estimates of high cross-elasticity between Imidacloprid topicals but low cross-elasticity between Imidacloprid and Fipronil topicals**

51.     The documents referenced in the first and second sentences of Paragraph 51 speak for themselves, and BHC otherwise lacks knowledge or information sufficient to form a belief as to the content of those documents.  The final two sentences of Paragraph 51 set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51, and therefore denies them.

52.     The documents cited in the first and second sentences of Paragraph 52 speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52, and therefore denies them.

53.     The data cited in the first and final sentences of Paragraph 53 speak for themselves, and BHC otherwise denies Tevra's characterizations of that data.  BHC's purchase agreements with retailers speak for themselves, and BHC otherwise denies Tevra's characterizations of those agreements.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 53, and therefore denies them.

54.     Tevra's allegations regarding the relevant antitrust market set forth legal conclusions

for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54, and therefore denies them.

**e. Examination of the Elanco/Bayer acquisition by U.S. FTC**

55.     BHC admits that its animal health business was acquired by Elanco and that the U.S. Federal Trade Commission ("FTC") reviewed the transaction.  Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 55.

56.     BHC admits that it was required to make disclosures to the FTC about animal medications it manufactured, including disclosures regarding its imidacloprid topical products. BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 56, and therefore denies them.

57.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies them.

58.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and therefore denies them.

59.     BHC notes that the allegations in Paragraph 59 purport to characterize the FTC's Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In the Matter of Elanco Animal Health, Inc., and Bayer Animal Health, GmbH*, File No. 1910198.  That document speaks for itself.  BHC denies the allegations in Paragraph 59 to the extent they are inconsistent with that document.

60.     BHC notes that the allegations in Paragraph 60 purport to characterize the FTC's Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In the Matter of Elanco Animal Health, Inc., and Bayer Animal Health, GmbH*, File No. 1910198.  That document speaks for itself.  BHC denies the allegations in Paragraph 60 to the extent they are inconsistent with that document.

61.     BHC notes that the allegations in Paragraph 61 purport to characterize the FTC's Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In the Matter of Elanco Animal Health, Inc., and Bayer Animal Health, GmbH*, File No. 1910198, and the proposed Consent

1  Agreement referenced therein.  Those documents speak for themselves.  BHC denies the allegations

2  in Paragraph 61 to the extent they are inconsistent with those documents.

3        62.     BHC admits that imidacloprid and fipronil topicals have a different active ingredient

4  and denies that they have significantly different therapeutic actions.  Tevra's allegations regarding

5  the relevant antitrust market set forth legal conclusions for which no response is required.  BHC

6  lacks knowledge or information sufficient to form a belief as to the truth of the remaining

7  allegations in Paragraph 62, and therefore denies them.

8        **f.**   **Imidacloprid topicals are distinct from and non-interchangeable with Fipronil**

9             **topicals.**

10        63.     BHC admits that the active ingredients in flea and tick treatments are insecticides

11  that kill and/or repel fleas and/or ticks.  BHC admits that two common insecticides used for flea and

12  tick protection are fipronil, the active ingredient in the topical treatment Frontline and other fipronil-

13  based products, and imidacloprid, the active ingredient in BHC's Advantage® II and K9 Advantix®

14  II products and other imidacloprid-based products.  BHC lacks knowledge or information sufficient

15  to form a belief as to the truth of the remaining allegations in Paragraph 63, and therefore denies

16  them.

17        64.     BHC admits that costs associated with developing its imidacloprid topical products

18  include costs associated with obtaining insecticides, developing methods of application for its

19  products, obtaining regulatory approval from the U.S. Environmental Protection Agency, and

20  marketing, selling, and delivering its products.  BHC lacks knowledge or information sufficient to

21  form a belief as to the truth of the remaining allegations in Paragraph 64, and therefore denies them.

22        65.     BHC denies the allegations in the first sentence of Paragraph 65.  BHC lacks

23  knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

24  Paragraph 65, and therefore denies them.

25        66.     BHC admits that its imidacloprid topical products repel fleas, ticks and mosquitoes.

26  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining

27  allegations in Paragraph 66, and therefore denies them.

28        67.     BHC denies the allegations in the first sentence of Paragraph 67.  The document

cited in the second sentence of Paragraph 67 speaks for itself, and BHC otherwise denies Tevra's characterization of that document.

68.     BHC contracts with distributors and retailers speak for themselves, and BHC otherwise denies Tevra's characterizations of those contracts.

69.     The documents cited in the first sentence of Paragraph 69 speak for themselves, and BHC otherwise denies Tevra's characterization of those documents.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 69, and therefore denies them.  BHC denies the remaining allegations in Paragraph 69.

70.     The documents and data cited in Paragraph 70 speak for themselves, and BHC otherwise denies Tevra's characterization of those documents and data.  Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.

71.     The Nielsen data referenced in Paragraph 71 speaks for itself, and BHC otherwise denies Tevra's characterization of that data.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71, and therefore denies them.

72.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72, and therefore denies them.

**g.     Topical flea and tick medications and delivery systems**

73.     BHC admits that flea and tick treatments for pets include flea collars, topicals, oral medications, sprays, wipes, and shampoos.  The documents and data cited in the second sentence of Paragraph 73 speak for themselves, and BHC otherwise denies Tevra's characterization of those documents and data.  Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 73.

74.     BHC admits that its Seresto® flea and tick collar can offer up to eight months of protection against fleas and ticks.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74, and therefore denies them.

75.     BHC admits that topical flea and tick treatments are distinct from flea collars, though BHC makes no representations regarding whether these products are in the same relevant product

market.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 75, and therefore denies them.

76.     BHC admits that flea and tick treatments may also be given to pets orally.  BHC admits that its Advantus product can be administered up to once per day and is targeted at killing adult fleas but denies that all oral products must be administered daily.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 76, and therefore denies them.

77.     BHC admits that flea and tick treatments include sprays, wipes, and shampoos.  Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 77, and therefore denies them.

78.     Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore denies them.

79.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79, and therefore denies them.

## 2.   The Geographic Market

80.     BHC does not dispute that the relevant geographic market is the United States, and Tevra's allegations regarding antitrust violations set forth legal conclusions for which no response is required.  BHC admits the allegations in the second and third sentences of Paragraph 80.

**B.   Fipronil generics lowered prices of Fipronil flea and tick medications.**

81.     BHC admits that Frontline is a top-selling fipronil topical brand.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81, and therefore denies them.

82.     BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82, and therefore denies them.

83.     Tevra's allegations regarding the relevant antitrust market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in Paragraph 83, and therefore denies them.

84.     Tevra's allegations regarding anticompetitive conduct and the relevant antitrust market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84, and therefore denies them.

**C. Bayer has substantially foreclosed Imidacloprid topical generics from the relevant market.**

**1. Imidacloprid products, including Advantix**

85.     Tevra's allegations in Paragraph 85 set forth legal conclusions for which no response is required.

86.     BHC admits that it registered imidacloprid topical products with the U.S. Environmental Protection Agency, providing a 10-year period of exclusivity, and denies that BHC was the owner of patents covering those imidacloprid topical products.  BHC admits that it engaged in scientific research in developing imidacloprid-based products.  The remaining allegations in Paragraph 86 set forth legal conclusions for which no response is required.

87.     BHC denies that it introduced its Advantage line of Imidacloprid topicals in 2002 and admits that its line of products now includes Advantage® II and K9 Advantix® II.  BHC denies that it was the owner of patents covering its imidacloprid-based flea and tick products.

88.     BHC admits that CAP IM Supply, Inc. was granted conditional registration by EPA for its generic imidacloprid topical in 2016.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88, and therefore denies them.

89.     BHC admits that on May 22, 2017, BHC, BAH GmbH, and Bayer Intellectual Property GmbH filed a patent infringement lawsuit against CAP IM Supply, Inc. in the U.S. District Court for the District of Delaware.  BHC admits that the lawsuit was settled and that CAP IM thereafter paid royalties for the use of the patented formula.

90.     BHC admits that imidacloprid topicals that have been sold in the U.S. include Advecta, PetLock II, and ParaDefense.  BHC admits that it has received royalties from CAP IM Supply, Inc. under the terms of a prior settlement.  BHC denies that it had CAP IM's product

"PetLock" removed from store shelves at PetCo.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 90, and therefore denies them.

91.    Tevra's allegations regarding illegal maintenance of a monopoly set forth a legal conclusion for which no response is required.  BHC otherwise denies the allegations in Paragraph 91.

92.    Tevra's allegations regarding illegal, anticompetitive, and exclusionary actions set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 92.

**2.    Registration of insecticides with EPA and "exclusive use"**

93.    BHC admits the allegations in the first sentence of Paragraph 93.  The allegations in the second sentence of Paragraph 93 characterize a federal statute.  That statute speaks for itself, and BHC otherwise denies Tevra's characterizations of that statute.

94.    The allegations in Paragraph 94 characterize a federal statute.  That statute speaks for itself, and BHC otherwise denies Tevra's characterizations of that statute.

95.    The allegations in Paragraph 95 characterize a federal statute.  That statute speaks for itself, and BHC otherwise denies Tevra's characterizations of that statute.

96.    The allegations in Paragraph 96 characterize a federal statute.  That statute speaks for itself, and BHC otherwise denies Tevra's characterizations of that statute.

97.    BHC admits that imidacloprid and fipronil manufacturers are not presently barred from entering the market under any FIFRA exclusivity period and admits that patents covered its imidacloprid topical products.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97, and therefore denies them.

98.    BHC admits that Tevra paid BHC "data compensation" in 2015 for the use of BHC's supporting data.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 98, and therefore denies them.

**D.    Tevra's attempts to enter the market for Imidacloprid topicals**

99.    BHC admits that it registered imidacloprid topical products with the U.S. Environmental Protection Agency and denies that it was the owner of patents covering its

imidacloprid topical products.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 99, and therefore denies them.

100.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, and therefore denies them.

101.    BHC denies that Tevra's imidacloprid topicals are more effective than BHC's imidacloprid topicals and denies that Tevra's method of delivering the active ingredient to the skin of the pet is superior to BHC's method.  BHC admits that Tevra's imidacloprid topicals and BHC's imidacloprid topicals contain the same active ingredient.

102.    BHC denies that Tevra's imidacloprid topicals kill ticks more effectively than BHC's imidacloprid topicals, denies that Tevra's imidacloprid topicals are less toxic than those produced by BHC, and denies that Tevra's products have a superior delivery method.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 102, and therefore denies them.

103.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, and therefore denies them.

**1.  Tevra's successful entry into the separate Fipronil topical market**

104.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104, and therefore denies them.

105.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105, and therefore denies them.

**2.  Tevra was foreclosed from entering the Imidacloprid topical market**

106.    BHC denies that Tevra's generic imidacloprid product is more effective than BHC's imidacloprid-based products.  BHC lacks knowledge or information sufficient to form a belief as to the cost of Tevra's imidacloprid products relative to BHC's imidacloprid products and on that basis denies the allegation that Tevra's products were less expensive.  Tevra's allegations regarding illegal monopolization, exclusive dealing, and substantial foreclosure set forth legal conclusions for which no response is required.

107.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 107, and therefore denies them.

108.    BHC denies that Tevra's generic imidacloprid topicals are more effective than BHC's brand-name imidacloprid topicals.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 108, and therefore denies them.

109.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, and therefore denies them.

110.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110, and therefore denies them.

111.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, and therefore denies them.

**E.   Bayer's Monopolization and Exclusive Dealing Foreclosed Entry into the Market for Imidacloprid Topicals**

112.    Tevra's allegations regarding the relevant antitrust market and monopolization set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 112.

113.    Tevra's allegations regarding the relevant antitrust market, monopolization, and substantial foreclosure set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 113.

**1.   Bayer's "second brand strategy" to block generic entry**

114.    The allegations in Paragraph 114, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent that the allegations in Paragraph 114 are directed at BHC, Tevra's allegations regarding the relevant antitrust market, illegal monopolization, and exclusive dealing set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 114.

115.    The document cited in Paragraph 115 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

116.    BHC admits that it sold an imidacloprid-based flea and tick product named Defense Care at PetSmart.  Tevra's reference to a "German Bayer entity" in the first sentence of Paragraph

116 requires no response because no German Bayer entities are still defendants in this action.  BHC

denies the remaining allegations in Paragraph 116.

117.    BHC admits that it sold an imidacloprid-based flea and tick product named Defense

Care at PetSmart in or around 2015.  The allegations regarding BAH GmbH require no response

because BAH GmbH is no longer a defendant in this action.  BHC denies the remaining allegations

in Paragraph 117.

118.    BHC admits that it sold an imidacloprid-based flea and tick product named Defense

Care at PetSmart in or around 2015.  The documents cited in Paragraph 118 speaks for themselves,

and BHC otherwise denies Tevra's characterizations of those documents.  The allegations regarding

BAH GmbH require no response because BAH GmbH is no longer a defendant in this action.  BHC

denies the remaining allegations in Paragraph 118.

119.    The document cited in Paragraph 119 speaks for itself, and BHC otherwise denies

Tevra's characterizations of that document.

### 2. Bayer's "no generics" conspiracy with retailers

120.    BHC's purchase agreements with retailers speak for themselves, and BHC otherwise

denies Tevra's characterizations of those agreements.  Tevra's allegations regarding monopolization

set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations

in Paragraph 120.

121.    The documents cited in Paragraph 121 speak for themselves, and BHC otherwise

denies Tevra's characterizations of those documents.  BHC lacks knowledge or information

sufficient to form a belief as to whether most of the major distributors and retailers in the U.S.

attended the February 15-17, 2016 Distributor Retail Summit and on that basis denies that

allegation.

122.    BHC denies that it had a "no generics" agreement with retailers and distributors and

otherwise denies the allegations in the first sentence of Paragraph 122.  The documents referenced

in the second sentence of Paragraph 122 speak for themselves, and BHC otherwise lacks knowledge

or information sufficient to form a belief as to the content of those documents.

123.    Tevra's allegations regarding illegal conduct and monopolization set forth legal

conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 123.

124.    The written presentations cited in Paragraph 124 speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.

125.     The written presentation cited in Paragraph 125 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.  BHC admits that it has received royalties from CAP IM Supply, Inc. under the terms of a prior settlement.  BHC lacks knowledge as to what products PetCo was carrying in August 2016 and on that basis denies the allegation that PetCo was carrying PetLock in August 2016.  BHC denies the remaining allegations in Paragraph 125.

126.    The written presentation cited in Paragraph 126 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

127.    The written presentation cited in Paragraph 127 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

128.    The written presentation cited in Paragraph 128 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.  Tevra's allegations regarding monopolization set forth a legal question for which no response is required.

129.    The written presentation cited in Paragraph 129 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

130.    The written presentation cited in Paragraph 130 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

131.    Tevra's allegations in Paragraph 131 regarding price-fixing, the Sherman Act, and the Clayton Act set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 131.

132.    BHC admits that its written contracts do not include the phrase "no generics" and admits that it sold its U.S. animal health assets to Elanco.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 132, and therefore denies them.

1    133.    Tevra's allegations regarding foreclosure set forth legal conclusions for which no

2    response is required.  BHC otherwise lacks knowledge or information sufficient to form a belief as

3    to the truth of the allegations in Paragraph 133, and therefore denies them.

4    134.    BHC admits that its written contracts do not include the phrase "no generics."  BHC

5    lacks knowledge or information sufficient to form a belief as to the truth of the remaining

6    allegations in Paragraph 134, and therefore denies them.

7    135.    BHC admits the allegations in the first sentence of Paragraph 135.  BHC denies that

8    Tevra's generic imidacloprid topicals are more effective than BHC's K9 Advantix® II product.

9    BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining

10   allegations in Paragraph 135, and therefore denies them.

11   136.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

12   allegations in Paragraph 136, and therefore denies them.

13   137.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

14   allegations in Paragraph 137, and therefore denies them.

15   138.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

16   allegations in Paragraph 138, and therefore denies them.

17   139.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

18   allegations in Paragraph 139, and therefore denies them.

19   140.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

20   allegations in Paragraph 140, and therefore denies them.

21   141.    BHC admits that its Seresto® flea and tick collar is protected by a U.S. patent.  BHC

22   lacks knowledge or information sufficient to form a belief as to the truth of the remaining

23   allegations in Paragraph 141, and therefore denies them.

24   142.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

25   allegation in Paragraph 142, and therefore denies it.

26   143.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

27   allegations in Paragraph 143, and therefore denies them.

28   144.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

1    allegations in Paragraph 144, and therefore denies them.

2         145.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

3    allegations in Paragraph 145, and therefore denies them.

4         146.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

5    allegations in Paragraph 146, and therefore denies them.

6         147.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

7    allegations in Paragraph 147, and therefore denies them.

8         148.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

9    allegations in Paragraph 148, and therefore denies them.

10        149.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

11   allegations in Paragraph 149, and therefore denies them.

12        150.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

13   allegations in Paragraph 150, and therefore denies them.

14        151.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

15   allegations in Paragraph 151, and therefore denies them.

16        152.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

17   allegations in Paragraph 152, and therefore denies them.

18        153.    BHC lacks knowledge or information sufficient to form a belief as to the truth of the

19   allegations in Paragraph 153, and therefore denies them.

20        154.    BHC denies that it engaged in a "no generics" conspiracy with distributors and

21   retailers.  BHC notes that the document cited in Paragraph 154 pertains to communications between

22   employees of BAH GmbH, which is no longer a defendant in this action.  That document speaks for

23   itself, and BHC otherwise denies Tevra's characterizations of that document.  BHC denies the

24   remaining allegations in Paragraph 154.

25        **3.  Bayer's direct payments to remove generic competition**

26        155.    BHC denies the allegations in Paragraph 155.

27        156.    The document(s) referenced in Paragraph 156 speak for themselves, and BHC

28   otherwise lacks knowledge or information sufficient to form a belief as to the content of those

1   documents.

2       157.    The document cited in Paragraph 157 speaks for itself, and BHC otherwise denies

3   Tevra's characterizations of that document.

4       158.    The document cited in Paragraph 158 speaks for itself, and BHC otherwise denies

5   Tevra's characterizations of that document.

6               **4.   Bayer changed its Purchase Agreements to block generic entry**

7       159.    BHC admits that it entered into purchase agreements with retailers and otherwise

8   denies the allegations in Paragraph 159.

9       160.    BHC admits that it offered an "imidacloprid exclusivity discount" in certain

10  agreements.  Those agreements speak for themselves, and BHC otherwise denies Tevra's

11  characterizations of those agreements.  BHC otherwise denies the allegations in Paragraph 160.

12      161.    BHC admits that it offered a "Preferred Placement and Promotions Discount" in

13  certain agreements.  Those agreements speak for themselves, and BHC otherwise denies Tevra's

14  characterizations of those agreements.  BHC lacks knowledge or information sufficient to form a

15  belief as to the truth of the allegations in the third and fourth sentences of Paragraph 161, and

16  therefore denies them.  BHC otherwise denies the allegations in Paragraph 161.

17      162.    BHC admits that it has offered discounts in certain retailer and distributor

18  agreements, including an imidacloprid exclusivity discount, base discount, SKU discount, Preferred

19  Placement and Promotions Discount, trade funds discount, and/or growth rebate.  Those agreements

20  speak for themselves, and BHC otherwise denies Tevra's characterizations of those agreements.

21  BHC otherwise denies the allegations in Paragraph 162.

22      163.    BHC admits that the discounts and rebates available to distributors and/or retailers

23  may vary by agreement.  Those purchase agreements speak for themselves, and BHC otherwise

24  denies Tevra's characterizations of those agreements.  BHC lacks knowledge or information

25  sufficient to form a belief as to the truth of the allegations in the final sentence of Paragraph 163,

26  and therefore denies them.

27      164.    BHC denies that its purchase agreements are not easily terminable by retailers or

28  distributors.  Tevra's allegations regarding the relevant antitrust market and monopolization within

that market set forth legal conclusions for which no response is required.  BHC denies the allegations in the third and fourth sentences of Paragraph 164.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the final sentence of Paragraph 164, and therefore denies them.

165.    BHC denies that its purchase agreements are not easily terminable by retailers or distributors.  BHC lacks knowledge as to the reasons that retailers and/or distributors accept or do not accept the terms of BHC's agreements and therefore denies the remaining allegations in Paragraph 165.

166.    BHC's purchase agreements speak for themselves, and BHC otherwise denies Tevra's characterizations of those agreements in Paragraph 166.  Tevra's allegations regarding the relevant antitrust market, substantial foreclosure, exclusive dealing, an anticompetitive scheme, and illegal agreements set forth legal conclusions for which no response is required.  BHC lacks knowledge as to whether retailers have told Tevra that they have entered into "no generics" agreements with BHC and on that basis denies those allegations.  BHC denies the remaining allegations in Paragraph 166.

167.    BHC denies that it has entered into any verbal or written no-generics agreements and denies that its agreements are not easily terminable.  Tevra's allegation that BHC's agreements act as *de facto* long-term exclusive dealing agreements and Tevra's allegations regarding the relevant antitrust market and alleged anticompetitive conduct set forth legal conclusions for which no response is required.  BHC's purchase agreements speak for themselves, and BHC otherwise denies Tevra's characterizations of those agreements in Paragraph 167.   BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 167, and therefore denies them.

168.    BHC denies that it has entered into any verbal or written no-generics agreements and denies that its agreements are not easily terminable.  Tevra's allegation that BHC's agreements act as *de facto* long-term exclusive dealing agreements and Tevra's allegations regarding the relevant antitrust market and alleged anticompetitive conduct set forth legal conclusions for which no response is required.  BHC denies the remaining allegations in Paragraph 168.

169.     BHC denies that it has a verbal understanding or agreement with retailers and/or distributors that they will not do business with generic manufacturers of imidacloprid topicals. Tevra's allegation that BHC's agreements act as *de facto* long-term exclusive dealing agreements and Tevra's allegations regarding anticompetitive discounts set forth legal conclusions for which no response is required.  BHC lacks knowledge as to what retailers told Tevra and on that basis denies Tevra's allegations regarding retailers' statements to Tevra.

### 5.     Bayer succeeded in maintaining its monopoly and foreclosing competition through exclusive dealing

170.     The document cited in Paragraph 170 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

171.     Tevra's allegations regarding the relevant antitrust market, monopolization within that market, and an alleged four-part strategy to substantially foreclose generic competition set forth legal conclusions for which no response is required.  BHC denies that it owned the patents covering its imidacloprid topical products and admits that it does not have exclusive use of its EPA registration data.  BHC lacks knowledge or information sufficient to form a belief as to the truth of Tevra's allegations regarding price and profitability, which are lacking in specificity, and on that basis denies them.  BHC denies the remaining allegations in Paragraph 171.

172.     Tevra's allegations regarding the relevant antitrust market, substantial foreclosure within that market, and anticompetitive discounts set forth legal conclusions for which no response is required.  BHC admits that certain retailer agreements have been renewed by retailers who continue doing business today.  BHC denies the remaining allegations in Paragraph 172.

173.     BHC admits that imidacloprid topicals are sold in several different sales channels in the U.S., including pet specialty retailers, internet retailers, general retailers, veterinarians, and direct-to-consumer sales.  The document cited in Paragraph 173 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

174.     The document cited in Paragraph 174 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.

175.     Tevra's allegations regarding the relevant antitrust market and substantial foreclosure

within that market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 175, and therefore denies them.

176.    BHC denies that it has a "no-generics rule."  Tevra's allegations regarding the relevant antitrust market, substantial foreclosure within that market, and anticompetitive discounts set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 176, and therefore denies them.

177.    BHC denies that it has a "no-generics rule."  Tevra's allegations regarding the relevant antitrust market, substantial foreclosure within that market, and anticompetitive discounts set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 177, and therefore denies them.

178.    Tevra's allegations regarding the relevant antitrust market and substantial foreclosure within that market set forth legal conclusions for which no response is required.  The "Channel Split" document cited in Paragraph 178 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 178, and therefore denies them.

179.    BHC denies that it engaged in a "no generics" conspiracy.  Tevra's allegations regarding the relevant antitrust market and substantial foreclosure within that market set forth legal conclusions for which no response is required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 179, and therefore denies them.

**F.  BAH GmbH actively participated in monopoly maintenance and exclusive dealing in the U.S.**

180.    The allegations in Paragraph 180, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 180 are directed at BHC, the documents referenced in Paragraph 180 speak for

themselves, and BHC otherwise lacks knowledge or information sufficient to form a belief as to the content of those documents.

181.    The allegations in Paragraph 181, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 181 are directed at BHC, the document cited in Paragraph 181 speaks for itself, and BHC otherwise denies Tevra's characterizations of that document.  BHC denies the remaining allegations in Paragraph 181.

182.    The allegations in Paragraph 182, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 182 are directed at BHC, the documents referenced in Paragraph 182 speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.  BHC lacks information regarding the "message" repeated by Mario Andreoli and on that basis denies the allegation pertaining to Andreoli in Paragraph 182.

183.    The allegations in Paragraph 183, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 183 are directed at BHC, the document(s) cited in Paragraph 183 speak for themselves, and BHC otherwise denies Tevra's characterizations of those documents.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 183, and therefore denies them.

184.    The allegations in Paragraph 184, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 184 are directed at BHC, Jeriel Chua's testimony speaks for itself, and BHC otherwise denies Tevra's characterization of that testimony.

185.    The allegations in Paragraph 185, which pertain to BAH GmbH, require no response because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in Paragraph 185 are directed at BHC, BHC notes that the document cited in Paragraph 185 pertains to communications between employees of BAH GmbH, which is no longer a defendant in this action. That document speaks for itself, and BHC otherwise denies Tevra's characterizations of that

1   document.

2         186.    The allegations in Paragraph 186, which pertain to BAH GmbH, require no response

3   because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in

4   Paragraph 186 are directed at BHC, the document cited in Paragraph 186 speaks for itself, and BHC

5   otherwise denies Tevra's characterizations of that document.

6         187.    The allegations in Paragraph 187, which pertain to BAH GmbH, require no response

7   because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in

8   Paragraph 187 are directed at BHC, the document cited in Paragraph 187 speaks for itself, and BHC

9   otherwise denies Tevra's characterizations of that document.  BHC lacks knowledge or information

10  sufficient to form a belief as to the truth of the remaining allegations in Paragraph 187, and

11  therefore denies them.

12        188.    The allegations in Paragraph 188, which pertain to BAH GmbH, require no response

13  because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in

14  Paragraph 188 are directed at BHC, BHC notes that the document cited in Paragraph 188 pertains to

15  a communication authored by an employee of BAH GmbH, which is no longer a defendant in this

16  action.  That document speaks for itself, and BHC otherwise denies Tevra's characterizations of that

17  document.

18        189.    The allegations in Paragraph 189, which pertain to BAH GmbH, require no response

19  because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in

20  Paragraph 189 are directed at BHC, BHC notes that the document cited in Paragraph 189 pertains to

21  a communication authored by an employee of BAH GmbH, which is no longer a defendant in this

22  action.  That document speaks for itself, and BHC otherwise denies Tevra's characterizations of that

23  document.

24        190.    The allegations in Paragraph 190, which pertain to BAH GmbH, require no response

25  because BAH GmbH is no longer a defendant in this action.  To the extent the allegations in

26  Paragraph 190 are directed at BHC, BHC notes that the document cited in Paragraph 190 pertains to

27  a presentation allegedly authored by BAH GmbH, which is no longer a defendant in this action.

28  That document speaks for itself, and BHC otherwise denies Tevra's characterizations of that

1  document.

2  191.  The allegations in Paragraph 191, which pertain to BAH GmbH, require no response

3  because BAH GmbH is no longer a defendant in this action. To the extent the allegations in

4  Paragraph 191 are directed at BHC, Tevra's allegations regarding the relevant antitrust market,

5  monopolization, and violations of the Sherman Act and Clayton Act set forth legal conclusions for

6  which no response is required. BHC otherwise denies the allegations in Paragraph 191.

7  **G. Bayer possesses monopoly power in the relevant market.**

8  192.  Tevra's allegations in Paragraph 192 regarding the relevant antitrust market and

9  monopoly power within that market set forth legal conclusions for which no response is required.

10  193.  Tevra's allegations in Paragraph 193 regarding the relevant antitrust market and

11  monopoly power within that market set forth legal conclusions for which no response is required.

12  194.  Tevra's allegations in Paragraph 194 regarding the relevant antitrust market and

13  monopoly power within that market set forth legal conclusions for which no response is required.

14  195.  Tevra's allegations regarding exclusionary conduct set forth a legal conclusion for

15  which no response is required.

16  196.  Tevra's allegations in Paragraph 196 regarding the relevant antitrust market set forth

17  a legal conclusion for which no response is required. BHC otherwise denies the allegations in

18  Paragraph 196.

19  197.  Tevra's allegations in Paragraph 197 regarding the relevant antitrust market, market

20  power within that market, and anticompetitive discounts set forth legal conclusions for which no

21  response is required. BHC denies that it offers financial incentives to "exclude generics." BHC

22  lacks knowledge or information sufficient to form a belief as to the truth of the remaining

23  allegations in Paragraph 197, and therefore denies them.

24  198.  Tevra's allegations in Paragraph 198 regarding monopoly power sets forth a legal

25  conclusion for which no response is required.

26  199.  Tevra's allegations in Paragraph 199 regarding the relevant antitrust market and

27  BHC's market share within that market set forth legal conclusions for which no response is

28  required.

1

**H. Anticompetitive Effects of Bayer's Conduct.**

2      200.    Tevra's allegations in Paragraph 200 regarding the relevant antitrust market set forth

3  legal conclusions for which no response is required.  BHC otherwise denies the allegations in

4  Paragraph 200.

5      **I.   Lack of Pro-Competitive Justification for Bayer's Actions**

6      201.    Tevra's allegations in Paragraph 201 regarding lack of procompetitive justifications

7  set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations

8  in Paragraph 201.

9      **J.   Antitrust Injury**

10      202.    Tevra's allegations in Paragraph 202 regarding antitrust injury set forth a legal

11  conclusion for which no response is required.  BHC denies the remaining allegations in Paragraph

12  202.

13      203.    Tevra's allegations in Paragraph 203 regarding the relevant antitrust market and

14  substantial foreclosure within that market set forth legal conclusions for which no response is

15  required.  BHC denies the remaining allegations in Paragraph 203.

16      204.    Tevra's allegations in Paragraph 204 regarding the relevant antitrust market and

17  substantial foreclosure within that market set forth legal conclusions for which no response is

18  required.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

19  remaining allegations in Paragraph 204, and therefore denies them.

20      205.    Tevra's allegations in Paragraph 205 regarding the relevant antitrust market and

21  substantial foreclosure within that market set forth legal conclusions for which no response is

22  required.  BHC admits that it has written purchase agreements with retailers and denies the

23  remaining allegations in Paragraph 205.

24      206.    Tevra's allegations in Paragraph 206 regarding the relevant antitrust market and

25  substantial foreclosure within that market set forth legal conclusions for which no response is

26  required.  BHC denies the remaining allegations in Paragraph 206.

27      207.    Tevra's allegations in Paragraph 207 regarding the relevant antitrust market and

28  substantial foreclosure within that market set forth legal conclusions for which no response is

1  required.  BHC denies the remaining allegations in Paragraph 207.

2  **K.  Tevra has attempted to mitigate its damages, without success.**

3  208.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

4  allegations in Paragraph 208, and therefore denies them.

5  209.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

6  allegations in Paragraph 209, and therefore denies them.

7  210.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

8  allegations in Paragraph 210, and therefore denies them.

9  **L.  Tevra Has Been Damaged by Bayer's Anti-Competitive Conduct.**

10  211.  Tevra's allegations regarding foreclosure and anticompetitive conduct set forth legal

11  conclusions for which no response is required.

12  212.  Tevra's allegations regarding illegal conduct set forth legal conclusions for which no

13  response is required.  BHC notes that Tevra characterizes a proposed method of estimating lost

14  profits in Paragraph 212.  BHC does not endorse Tevra's method of estimating lost profits and on

15  that basis denies the remaining allegations in Paragraph 212.

16  213.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

17  allegations in Paragraph 213, and therefore denies them.

18  214.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

19  allegations in Paragraph 214, and therefore denies them.

20  215.  BHC lacks knowledge or information sufficient to form a belief as to the truth of the

21  allegations in Paragraph 215, and therefore denies them.

22  216.  BHC denies that Tevra is entitled to any relief in this action and otherwise denies the

23  allegations in Paragraph 216.

24  **CLAIMS FOR RELIEF**

25  **COUNT I**
   **UNLAWFUL MAINTENANCE OF A MONOPOLY, IN VIOLATION**
26  **OF § 2 SHERMAN ACT, 15 U.S.C. §2**

27  217.  BHC incorporates its responses to the preceding paragraphs of the SAC as though

28  fully set forth herein.

218.     Tevra's allegations in Paragraph 218 regarding the relevant antitrust market and BHC's market share within that market set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 218.

219.     Tevra's allegations in Paragraph 219 regarding the relevant antitrust market and BHC's market share within that market set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 219.

220.     Tevra's allegations in Paragraph 220 regarding the relevant antitrust market, BHC's market share within that market, and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 220.

221.     Tevra's allegations in Paragraph 221 regarding the relevant antitrust market, BHC's market share within that market, monopolization, and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 221.

222.     Tevra's allegations in Paragraph 222 regarding the relevant antitrust market, BHC's market share within that market, monopolization, and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 222.

Tevra's request for relief following Paragraph 222 sets forth legal conclusions and a prayer for relief to which no response is required.

### COUNT II
### CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF TRADE, IN VIOLATION OF § 1 SHERMAN ACT, 15 U.S.C. §1
### Exclusive Dealing

223.     BHC incorporates its responses to the preceding paragraphs of the SAC as though fully set forth herein.

224.     Tevra's allegations in Paragraph 224 set forth legal conclusions regarding violations of Section 1 of the Sherman Act for which no response is required.  BHC otherwise denies the allegations in Paragraph 224.

225.     Tevra's allegations in Paragraph 225 set forth legal conclusions regarding the

relevant antitrust market, exclusive dealing, and substantial foreclosure for which no response is required.  BHC otherwise denies the allegations in Paragraph 225.

226.     Tevra's allegations in Paragraph 226 regarding the relevant antitrust market and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 226.

227.     Tevra's allegations in Paragraph 227 regarding the relevant antitrust market and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 227.

Tevra's request for relief following Paragraph 227 sets forth legal conclusions and a prayer for relief to which no response is required.

## COUNT III
## EXCLUSIVE DEALING IN VIOLATION OF § 3 CLAYTON ACT, 15 U.S.C. § 14

228.     BHC incorporates its responses to the preceding paragraphs of the SAC as though fully set forth herein.

229.     BHC admits that it has engaged in U.S. interstate commerce by selling goods, including Imidacloprid topicals, to distributors and retailers.

230.     Tevra's allegations in Paragraph 230 regarding alleged violations of § 3 of the Clayton Act set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 230.

231.     Tevra's allegations in Paragraph 231 regarding the relevant antitrust market and monopolization set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 231.

232.     Tevra's allegations in Paragraph 232 regarding the relevant antitrust market and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 232.

233.     Tevra's allegations in Paragraph 233 regarding the relevant antitrust market, exclusive dealing, and substantial foreclosure set forth legal conclusions for which no response is required.  BHC otherwise denies the allegations in Paragraph 233.

Tevra's request for relief following Paragraph 233 sets forth legal conclusions and a prayer for relief to which no response is required.

### JURY DEMAND

BHC hereby demands a trial by jury on all issues so triable.

### AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would not otherwise bear, BHC asserts the following separate and additional defenses, all of which are pleaded in the alternative, and none of which constitute an admission that BHC is in any way liable to Plaintiff, that Plaintiff has been or will be injured or damaged in any way, or that Plaintiff is entitled to any relief whatsoever.  As a defense to the SAC and each and every allegation contained therein, BHC alleges:

### First Defense

Tevra's claims are barred, in whole or in part, because BHC's alleged conduct did not lead to the acquisition or maintenance of monopoly power and was lawful, pro-competitive, and based on legitimate business and economic justifications.

### Second Defense

Tevra's claims are barred, in whole or in part, because BHC's alleged conduct did not unreasonably restrain trade and was lawful, pro-competitive, and based on legitimate business and economic justifications.

### Third Defense

Tevra's claims are barred, in whole or in part, because BHC's alleged conduct has not harmed competition or the competitive process, and was lawful, pro-competitive, and based on legitimate business and economic justifications.

### Fourth Defense

Tevra's claims are barred, in whole or in part, because BHC has never had, and does not have, a dangerous probability of attaining monopoly power in any relevant market.

### Fifth Defense

Tevra's claims are barred, in whole or in part, because there has been no injury to competition in fact or as alleged in the SAC.

1

### Sixth Defense

2       Tevra's claims are barred, in whole or in part, because the product market alleged in the

3   complaint is not legally cognizable.

4

### Seventh Defense

5       Tevra's actions are barred, in whole or in part, because Tevra's alleged injuries were not

6   proximately caused by BHC.

7

### Eighth Defense

8       Tevra's actions are barred, in whole or in part, because Tevra's alleged injuries resulted from

9   intervening causes.

10

### Ninth Defense

11      Tevra's claims are barred, in whole or in part, because Tevra's purported damages are too

12  speculative to be awarded.

13

### Tenth Defense

14      Tevra is precluded from recovering damages, in whole or in part, because and to the extent of its

15  failure to mitigate damages.

16

### Eleventh Defense

17      Tevra's claims are barred, or its recoverable damages are limited, in whole or in part, by the

18  relevant statute of limitations.

19                                              ***

20      BHC reserves the right to assert other defenses as this action proceeds.

21

### PRAYER FOR RELIEF

22          WHEREFORE, BHC prays that judgment be entered dismissing the Second Amended

23  Complaint with prejudice, directing that Tevra take nothing, and awarding to BHC its costs and

24  fees, along with such other relief as may be just and proper.

25
    Dated:  January 20, 2022.                      Respectfully submitted,
26
                                                   **ARNOLD & PORTER KAYE SCHOLER LLP**
27                                                 DANIEL B. ASIMOW
                                                   SONIA K. PFAFFENROTH
28                                                 LAURA S. SHORES
                                                   SEAN M. CALLAGY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By   /s/ *Daniel B. Asimow*
DANIEL B. ASIMOW

Attorneys for Defendant BAYER
HEALTHCARE LLC

1

**CERTIFICATE OF SERVICE**

2

     I, Daniel B. Asimow, hereby certify that all counsel of record who are deemed to have

3

consented to electronic service are being served a copy of the foregoing **BAYER HEALTHCARE**

4

**LLC'S ANSWER TO SECOND AMENDED COMPLAINT** via the Court's CM/ECF system on

5

January 20, 2020.

6

7

                                 /s/ *Daniel B. Asimow*
                                 DANIEL B. ASIMOW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28