1  DANIEL B. ASIMOW (Bar No. 165661)
   daniel.asimow@arnoldporter.com
2  SEAN M. CALLAGY (Bar No. 255230)
   sean.callagy@arnoldporter.com
3  ANDREW S. HANNEMANN (Bar No. 322400)
   andrew.hannemann@arnoldporter.com
4  **ARNOLD & PORTER KAYE SCHOLER LLP**
   Three Embarcadero Center, 10th Floor
5  San Francisco, CA 94111-4024
   Telephone:    415.471.3100
6  Facsimile:    415.471.3400

7
   SONIA K. PFAFFENROTH (Bar No. 223984)
8  sonia.pfaffenroth@arnoldporter.com
   LAURA S. SHORES (appearance *pro hac vice*)
9  laura.shores@arnoldporter.com
   **ARNOLD & PORTER KAYE SCHOLER LLP**
10 601 Massachusetts Ave, NW
   Washington, D.C. 20001-3743
11 Telephone:    202.942.5000
   Facsimile:    202.942.5999
12

13 Attorneys for Defendant
   BAYER HEALTHCARE LLC
14

15            UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA

17                  SAN JOSE DIVISION

18

19 TEVRA BRANDS, LLC,                  Case No. 5:19-cv-04312-BLF

20            Plaintiff,              **BAYER HEALTHCARE LLC'S OPPOSITION
                                      TO MOTION TO EXCLUDE CERTAIN
21     v.                            OPINIONS AND TESTIMONY OF CELESTE
                                      SARAVIA**
22 BAYER HEALTHCARE LLC,
                                      Date:        April 18, 2024
23            Defendant.             Time:        9:00 a.m.
                                      Courtroom:   3, 5th Floor
24                                    Judge:       Hon. Beth Labson Freeman

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2
**<u>Page</u>**

3
INTRODUCTION ........................................................................................................... 1

4
LEGAL STANDARD..................................................................................................... 1

5
ARGUMENT .................................................................................................................. 2

6

7
I.      DR. SARAVIA'S RELEVANT MARKET DEFINITION IS OFFERED IN THE CONTEXT OF REBUTTING DR. WONG'S OVERLY NARROW MARKET DEFINITION AND IS CONSISTENT WITH HER EXPERT OBLIGATIONS .................. 2

8

9
II.     DR. SARAVIA USES RELIABLE PRINCIPLES AND METHODS ................................... 4

10
      A.      Dr. Saravia Properly Employs the Hypothetical Monopolist Test.............................. 4

11
      B.      Dr. Saravia's Methodology Is Based on Sufficient Facts and Data ........................... 7

12
CONCLUSION ................................................................................................................ 8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3

### <u>Cases</u>

4

*Apple iPod iTunes Antitrust Litig.*,
5
    No. 05-CV-0037-YGR, 2014 WL 4809288 (N.D. Cal. Sept. 26, 2014)...............................5, 7

6

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    Nos. CV-00-20905 RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008)..................................4, 5

7

8

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 14-md-02541 CW, 2018 WL 1948593 (N.D. Cal. Apr. 25, 2018), *aff'd sub*
9
    *nom. In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust*
    *Litig.*, No. 14-md-02541 CW, 2018 WL 4241981 (N.D. Cal. Sept. 3, 2018).........................6

10

*In re Vitamin C Antitrust Litig.*,
11
    No. 06–MD–1738 (BMC)(JO), 2012 WL 6675117 (E.D.N.Y. Dec. 21, 2012) ......................2

12

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008).................................................................................................2

13

*Primiano v. Cook*,
14
    598 F.3d 558 (9th Cir. 2010)...................................................................................................1

15

*Sidibe v. Sutter Health*,
16
    No. 12-cv-04854-LB, 2019 WL 2078788 (N.D. Cal. May 9, 2019) .......................................5

17
*Sumotext Corp. v. Zoove, Inc.*,
    No. 16-cv-01370-BLF, 2020 WL 264701 (N.D. Cal. Jan. 17, 2020) .....................................3

18

19
*Sumotext v. Zoove, Inc.*,
    No. 16-cv-01370-BLF, 2020 WL 533006 (N.D. Cal. Feb. 3, 2020) ..................................5, 8

20

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
21
    No. CV 15-02370 JVS, 2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) ..................................3

22
*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008)...............................................................................................5, 7

23

### <u>Other Authorities</u>

24

25
Fᴇᴅ. R. Eᴠɪᴅ. 702 (eff. Dec. 1, 2023) .......................................................................................1

26
Malcolm B. Coate & Jeffrey H. Fischer, *A Practical Guide to the Hypothetical*
    *Monopolist Test for Market Definition*, 4 J. Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ L. & Eᴄᴏɴ. 1031
27
    (2008) .......................................................................................................................................5

28

**INTRODUCTION**

Tevra claims that Dr. Saravia's opinions should be excluded because she offers two alternative market definitions, and because does not conduct an empirical econometric analysis to define a relevant market. Tevra Brands, LLC's Mot. to Exclude Certain Opinions and Testimony of Celeste Saravia ("Mot."), ECF No. 252. Tevra is wrong on both counts. Dr. Saravia meets her expert obligations as a rebuttal witness in responding to the flawed market definition of Tevra's expert, Dr. Wong. That Dr. Saravia offers two potential alternative market definitions that are each more plausible than Dr. Wong's definition, with a higher level of confidence as to one, is entirely appropriate. This reflects a precise and careful approach on her part, and Tevra cites nothing for the proposition that an expert may express only one view on a topic. *See* Section I. Dr. Saravia's methodology – a qualitative hypothetical monopolist test that looks at ordinary course of business documents, data, and witness testimony, including a customer survey – is a reliable method that has been consistently recognized in economic literature as well as case law. *See* Section II.A. The type of econometric price elasticity analysis that Tevra says Dr. Saravia should have conducted is neither required under the law nor possible because of limitations in the underlying data – a fact well-illustrated by the glaring defects in the purported quantitative review offered by Dr. Wong, which is itself subject to exclusion. *Id.* In contrast to Dr. Wong, Dr. Saravia's opinions are based upon sufficient facts and data, as indicated in both her expert report and testimony. *See* Section II.B. For those reasons, Tevra's Motion should be denied.

**LEGAL STANDARD**

A qualified expert may provide opinion testimony "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702 (eff. Dec. 1, 2023). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Deference to experts

is particularly appropriate with experts in "disciplines that require the use of professional judgment," such as economics, because "challenges may be ultimately viewed as matters in which reasonable experts may differ." *In re Vitamin C Antitrust Litig.*, No. 06–MD–1738 (BMC)(JO), 2012 WL 6675117, at *5 (E.D.N.Y. Dec. 21, 2012).

**ARGUMENT**

## I.  DR. SARAVIA'S RELEVANT MARKET DEFINITION IS OFFERED IN THE CONTEXT OF REBUTTING DR. WONG'S OVERLY NARROW MARKET DEFINITION AND IS CONSISTENT WITH HER EXPERT OBLIGATIONS

Dr. Wong offers the opinion that "imidacloprid spot-on products" is the relevant product market.[1]  Declaration of Daniel B. Asimow ("Asimow Decl.") Ex. 1 (Wong Report) ¶ 74.  Dr. Saravia rebuts Dr. Wong's opinion, pointing out that there are close substitutes for imidacloprid topicals, such

---

[1] Tevra's initially proposed relevant market of "topical flea and tick products containing Imidacloprid sold at wholesale by manufacturers to Over-The-Counter ("OTC") retailers in the U.S…" was rejected by this Court partly because the "exclusion of direct sale[s] to consumers" was "not facially sustainable."  Order Dismissing First Amended Complaint, ECF No. 155 at 10, 14-15.  In recognition of the Court's Order, Tevra alleged a broader relevant market of "topical flea and tick products for dogs and cats containing Imidacloprid sold in the U.S." in the Second Amended Complaint.  SAC ¶ 15.  Tevra reiterates this contention in the Motion at issue.  Mot. at 2:16-17.  But elsewhere Tevra suggests the market is limited to "imidacloprid topical products *sold to wholesale customers* in the United States."  *Id.* at 2:25 (emphasis added).  Dr. Wong likewise defines the relevant market as "only imidacloprid spot-ons," but then prefaces the paragraph by referencing "the U.S. wholesale market."  Asimow Decl. Ex. 1 (Wong Report) ¶ 74.  Any attempt by Tevra to limit the proposed relevant market to a particular class of purchasers would be improper as a matter of law.  *See Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d 1038, 1045 (9th Cir. 2008) ("First and foremost, the relevant market must be a *product* market.  The consumers do not define the boundaries of the market; the products or producers do.") (emphasis in original; footnote omitted).  In this opposition, Bayer assumes Tevra continues to advance the market definition outlined in the Second Amended Complaint and not a more narrow definition constrained by customer type.

1    as fipronil topical products or oral products.  She concludes that instead of being constrained by

2    particular chemical compounds, the relevant product market is broader than Dr. Wong's defined

3    market, and "includes topical flea and tick medications that use active ingredients besides

4    imidacloprid and likely includes all preventative flea and tick medications." Asimow Decl. Ex. 2

5    (Saravia Report) § 5.

6         As Tevra itself recognizes, Dr. Saravia, as the defendant's expert witness, need not prove a

7    relevant market in an antitrust case.  Mot. at 3:2–3 ("[t]here is no concomitant burden on a defendant

8    in an antitrust case to present an alternative definition of the relevant market.").  "A defendant may

9    present expert rebuttal of the plaintiff's expert 'by putting forth its own expert who either claims that

10    (1) the plaintiff's expert's methodology was conducted improperly in some way; or (2) the ultimate

11    conclusion the plaintiff's expert makes is flawed because a superior methodology provides a different

12    result.'"  *Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2020 WL 264701, at \*3 (N.D. Cal.

13    Jan. 17, 2020) (quoting *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No.

14    CV 15-02370 JVS, 2016 WL 7042085, at \*5 (C.D. Cal. Aug. 17, 2016)).  Here, Dr. Saravia's opinions

15    fall into both categories – (1) she identifies potential substitutes for imidacloprid topical products

16    based on record evidence, and concludes that Dr. Wong has not used any legitimate methodology to

17    exclude those potential substitutes from his market definitions; (2) she uses a qualitative hypothetical

18    monopolist test, a superior methodology for this case, and arrived at a relevant market that was at its

19    broader than that proposed by Dr. Wong.

20         The statements that Tevra characterizes as an "open-ended hypothetical," "platitudes," "mere

21    possibility," or "speculative criticism," Mot. at 3-4, 6, are part of Dr. Saravia's commentary on

22    deficiencies on Dr. Wong's opinions.  Dr. Saravia offers "topical flea and tick medications that use

23    active ingredients besides imidacloprid" and "all preventative flea and tick medications" as potential

24    alternatives to Dr. Wong's relevant market of imidacloprid topical products.  Mot. at 3; Asimow Decl.

25    Ex. 2 (Saravia Report) ¶¶ 11, 60.  She reasonably explains that the market is at least as broad as all

26    topicals, and probably as broad as all preventive flea and tick products.  *Id.*; *see also* Asimow Decl.

27    Ex. 3 (Saravia Dep.) at 58:13-59:21.  This is entirely appropriate: an expert can express two opinions

28    – both more likely than not – and indicate a higher degree of confidence in one of those opinions.

*See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, Nos. CV-00-20905 RMW, 2008 WL 73689, at *11 (N.D. Cal. Jan. 5, 2008) (declining to exclude expert opinion that stated that a reasonable relevant market definition consisted of six relevant technology markets, and could also include alternative interface technologies if it were demonstrated that the alternative interface technologies were sufficiently close substitutes).  Dr. Saravia explains that Dr. Wong's insistence on a narrower market is based on a flawed methodology – a so-called "natural experiment" that is in fact not valid because it fails to account for (or even address) other market developments that occurred over a six-year period.  Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 12, 120; *see also* Bayer HealthCare LLC's Mot. for Summ. J., ECF No. 266 at 12-13.  She explains that Dr. Wong's regression analysis is flawed because he uses an arbitrary "estimate" to account for a whole year of unavailable data, and because even if correctly implemented the regression analysis goes only to the question of generic fipronil's relative effect on brand fipronil and brand imidacloprid sales, which is not a sufficient basis to support an opinion on market definition.  Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 113-124; Ex. 3 (Saravia Dep.) at 106:11-107:10; *see also* Bayer HealthCare LLC's Mot. to Exclude Certain Expert Opinions of Dr. Paul Wong, ECF No. 288 at 10.  As a result, she concludes that Dr. Wong "has no basis for his opinions."  Asimow Decl. Ex. 3 (Saravia Dep.) at 107:7-8.  Dr. Saravia did not conduct an independent empirical analysis because she "did not think that the data was robust enough."  *Id.* at 41:17-21.  Instead, Dr. Saravia "analyzed Bayer's strategic documents [and] customer surveys that ask questions very similar to what an empirical analysis of a hypothetical monopolist test would do."  *Id.* at 41:10-13.  This demonstrates that Dr. Saravia used a superior methodology, amply supporting her conclusion that the relevant market is broader than that offered by Dr. Wong, and at a minimum includes topical flea and tick medications that use active ingredients besides imidacloprid, and likely includes all preventative flea and tick medications.  Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 11, 60.

## II.   DR. SARAVIA USES RELIABLE PRINCIPLES AND METHODS

### A.   Dr. Saravia Properly Employs the Hypothetical Monopolist Test

Tevra argues that Dr. Saravia did not use "objective, verifiable methodologies" to support her relevant market opinions, and that her opinion is incapable of a "viable cross-check."  Mot. at 4–6.  Tevra's argument seems to be based on the belief that an empirical cross price elasticity analysis is

1   the only correct form of the hypothetical monopolist test.  *Id*. at 7.

2           Tevra's argument is based on a fundamental misunderstanding of law and economics.  The

3   hypothetical monopolist test, also referred to as the SSNIP test, asks "whether a [hypothetical]

4   monopolist in the proposed market could profitably impose a small but significant and nontransitory

5   price increase." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008);

6   *see also* Asimow Decl. Ex. 3 (Saravia Dep.) at 52:18-54:7.  While the hypothetical monopolist test

7   can be applied using econometric analysis, "it is also standard to consider a variety of more qualitative

8   evidence such as information about 'how customers have shifted purchases in the past in response to

9   relative changes in price… information from buyers, including surveys… sellers' business

10   documents… [and] objective information about product characteristics.'"  Asimow Decl. Ex. 2

11   (Saravia Report) ¶ 58 (quoting *Horizontal Merger Guidelines* § 4.1.3.); Asimow Decl. Ex. 3 (Saravia

12   Dep.) at 81:19-84:21; *see also* Malcolm B. Coate & Jeffrey H. Fischer, *A Practical Guide to the*

13   *Hypothetical Monopolist Test for Market Definition*, 4 J. COMPETITION L. & ECON. 1031, 1032 (2008).

14           Indeed, as this Court has recognized, "there is no requirement in this Circuit that an expert use

15   any particular form of analysis in developing an opinion on market definition."  *Sumotext v. Zoove,*

16   *Inc.*, No. 16-cv-01370-BLF, 2020 WL 533006, at *11 (N.D. Cal. Feb. 3, 2020).  Courts recognize

17   that the data required for econometric analysis of cross-elasticity of demand is typically unavailable

18   (as was the case here); thus, such analysis is not required so long as the economic expert is able to

19   rely on sufficient record evidence, qualitative data, and experience.  *Id.* ("Courts in this district and

20   others have often admitted expert testimony on market definition where the expert did not conduct an

21   econometric study"); *Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037-YGR, 2014 WL 4809288,

22   at *7 (N.D. Cal. Sept. 26, 2014) (denying *Daubert* motion where economics expert looked to "internal

23   Apple documents, employee testimony, and discovery responses, third-party information such as

24   contemporaneous financial analysis and press coverage"); *Hynix Semiconductor*, 2008 WL 73689, at

25   *10 (admitting expert report on market definition even though expert did not use the SSNIP test to

26   determine if the technologies are close economic substitutes); *see also Sidibe v. Sutter Health*, No.

27   12-cv-04854-LB, 2019 WL 2078788, at *26 n. 201 (N.D. Cal. May 9, 2019) ("[E]ven where parties

28   rely on expert opinion to support their market definitions, there is no requirement that the expert

conduct an econometric analysis, as opposed to basing the expert opinion on other facts."). Any criticism that an expert did not use econometric analysis goes to the weight and not the admissibility of the evidence. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-02541 CW, 2018 WL 1948593, at *5 (N.D. Cal. Apr. 25, 2018) (Objections that expert opinions are "unsupported by econometric or other analysis reflecting a generally accepted methodology…go to the weight of the evidence at trial, not to its admissibility."), *aff'd sub nom. In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 14-md-02541 CW, 2018 WL 4241981 (N.D. Cal. Sept. 3, 2018)

Dr. Saravia recognized that in this case, "the data were not sufficiently robust to actually conduct an empirical hypothetical monopolist test." Asimow Decl. Ex. 3 (Saravia Dep.) at 40:20-23. Therefore, Dr. Saravia relied upon qualitative and quantitative evidence to conduct the hypothetical monopolist test. Dr. Saravia "analyzed Bayer's strategic documents and… customer surveys that ask questions very similar to what an empirical analysis of a hypothetical monopolist test would do." Asimow Decl. Ex. 3 (Saravia Dep.) at 41:9-13; *see also* 81:19-84:21. The documents and surveys analyzed by Dr. Saravia include the following:



- ███████████████████████████████████████████████████ Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 71-74, 91.

- ███████████████████████████████████████████████████ Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 92-94, Exs. 8, 9, 10, 13.

- Bayer and Tevra documents that discussed imidacloprid and fipronil products, and topical and non-topical products, as competing products. Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 63-65, 77-78. The documents included presentations made to retailers, internal strategy decks, and emails. *Id.*

- Bayer and Tevra documents that tracked market share across chemical compounds and application formats. Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 67-69. The documents included presentations made to retailers and investors, internal strategy decks, and emails. *Id.*

- Bayer documents that studied consumers' switching behavior across formats. Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 79-87. The documents included presentations made to retailers, internal strategy decks, and emails. *Id.*

- A Bayer advertisement campaign that targeted customers using oral flea and tick

medications, which indicated that Bayer considered oral flea and tick products as competition.  Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 80-81.

- Industry reports that discussed industry trends from topicals towards orals and collars, as well as consumer behavior among different flea and tick medications.  Asimow Decl. Ex. 2 (Saravia Report) ¶¶ 66, 88-90.

In particular, 

– thus the relevant market is broader than K9 Advantix II and should include fipronil-based topical products, such as Frontline Plus, and oral products, such as Bravecto.  Asimow Decl. Ex. 2 (Saravia Report) ¶ 73; *see also Theme Promotions*, 546 F.3d at 1002 ("If a significant number of customers would respond to a SSNIP by purchasing substitute products, the SSNIP would not be profitable for the hypothetical monopolist.  If a monopolist could not profitably impose a SSNIP, the market definition should be expanded to include those substitute products that constrain the monopolist's pricing") (citation omitted).

### B.    Dr. Saravia's Methodology Is Based on Sufficient Facts and Data

Tevra argues that Dr. Saravia offers "cavalier, 'take-my-word-for-it' conclusions" that are incapable of a "viable cross-check," "verification or cross-examination."  Mot. at 4, 6.  That is simply not true.  Qualitative data such as internal documents, witness testimony, discovery responses, third-party information are all types of information that this Court has recognized as sufficient facts or data that serves as the basis for an expert opinion.  *Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288,

---

[2] This Court has recognized that survey evidence is particularly important in antitrust cases that center around market definition.  Mot. to Dismiss Second Am. Compl. Hr'g Tr. at 8 (Nov. 3, 2021) ("I would expect that in a case like this, the parties will consider consumer surveys on this issue.").

1   at *7; *Sumotext*, 2020 WL 533006, at *11.  Tevra's arguments that Dr. Saravia's opinions are

2   conclusory and unpersuasive are "proper subjects for cross-examination" and not basis for exclusion.

3   *Id.* at *12.

4          Tevra asks, "what *did* Dr. Saravia rely upon to proffer her opinion?"  Mot. at 7 (emphasis in

5   original).  In asking this question, Tevra ignores pages of evidence cited in both Dr. Saravia's report

6   and testimony, solely because it is not raw price elasticity data, the only kind of evidence Tevra

7   believes is appropriate for this case.  Contrary to Tevra's assertions, Dr. Saravia provides "concrete

8   identification of… meaningful facts or data necessary to support [her] opinion," Mot. at 4, as listed

9   in Section II.A.  Indeed, Dr. Saravia's report includes 450 footnotes, and her list of materials relied

10  upon include thousands of documents that include Bayer- and Tevra-produced documents, deposition

11  transcripts, transactional data, and public documents.  *See* Asimow Decl. Ex. 2 (Saravia Report) at

12  App'x B.  In contrast, Dr. Wong's opening report did not cite to a single Tevra-produced document

13  regarding market definition (nor even attempt to address the many Tevra business documents

14  indicative of a broader market than imidacloprid topicals).  *See* Asimow Decl. Ex. 1 (Wong Report)

15  at Ex. 2.  He uses flawed arbitrary "estimates" for data as the basis for his market definition opinions.

16  *See* Section I; ECF No. 288 at 10.  Tevra is free to test Dr. Saravia's claims through documents and

17  data, either referenced by Dr. Saravia or otherwise.  That it has failed to successfully do so is no fault

18  of Bayer's.

19                                          **CONCLUSION**

20         For the reasons stated herein, Bayer respectfully requests that Tevra's Motion to Exclude

21  Certain Opinions and Testimony of Celeste Saravia be denied.

22

23  Dated: February 22, 2024.                    Respectfully submitted,

24                                               **ARNOLD & PORTER KAYE SCHOLER LLP**

25                                               By:  /s/ *Daniel B. Asimow*
                                                      DANIEL B. ASIMOW
26

27                                               *Attorneys for Defendant*
                                                 BAYER HEALTHCARE LLC
28