UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVRA BRANDS LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BAYER HEALTHCARE LLC, et al.,<br><br>　　　　Defendants. | Case No.   19-cv-04312-BLF<br><br>**ORDER REGARDING MOTIONS** *IN LIMINE*<br><br>[Re: ECF Nos. 368, 370, 371, 372, 373, 374] |

On June 13, 2024, the Court held a pretrial conference in this action, during which it issued oral rulings on Plaintiff Tevra Brands LLC.'s ("Tevra") and Defendant Bayer Healthcare LLC.'s ("Bayer") motions *in limine*. ECF No. 407 ("Hearing Tr."). The Court here expands upon those oral rulings.

**I.    BACKGROUND**

Tevra brings this antitrust action against Bayer alleging it engaged in exclusionary practices that substantially restrained trade in the market for topical imidacloprid flea and tick treatments for dogs and cats. Tevra's Second Amended Complaint alleges three claims: violations of Sections 1 and 2 of the Sherman Act (exclusive dealing and maintenance of a monopoly) and Section 3 of the Clayton Act (exclusive dealing). ECF No. 196.

The Court recently granted in part and denied in part Bayer's motion for summary judgment. ECF No. 322 ("SJ Order"). The Court found that Tevra presented sufficient "evidence of pressure and monetary incentives not to carry imidacloprid generics" to preclude summary judgment on Bayer's argument that its "agreements are not short-term and easily terminable." *Id.* at 14. The parties also recently filed *Daubert* motions challenging the opposing parties' experts. Bayer sought to exclude Tevra's expert Dr. Wong's "Frontline Method" damages opinion, which

the Court granted in part and denied in part. ECF No. 341 ("*Daubert* Order") at 10–14. Specifically, the Court did not exclude the first part of Dr. Wong's opinion, which "estimates the quantity of [imidacloprid] sales Bayer would have lost due to generic entry without its exclusivity agreements in place," but excluded the second part of the opinion, which assigned 100% of those incremental sales to Tevra. *Id.* Tevra sought to exclude Bayer's expert Dr. Celeste Saravia's relevant market opinion, including a "qualitative" hypothetical monopolist test ("HMT") based on a 2019 study (*see* ECF No. 366-5, "Willingness to Pay Study" or "Study"), which the Court denied. *Daubert* Order at 5–9.

## II. DISCUSSION

The parties filed six total motions *in limine*. The Court addresses Tevra's sole motion, then Bayer's five motions in turn.

### A. Tevra's Motion *in Limine* No. 1 to Exclude the Bayer-Commissioned Consumer Study (ECF No. 368)

Bayer's expert Dr. Saravia's relevant market opinion implements a qualitative HMT based on a Willingness to Pay Study conducted by Bayer. *Daubert* Order at 5–9. Tevra seeks to exclude evidence, arguments, and references to that study. ECF No. 366-1. Tevra makes four arguments, which the Court addresses in turn.

First, Tevra argues that Bayer misleadingly calls the Study a "Consumer Survey" and misrepresents that the data was collected in 2019 when in fact the data was collected in 2016. *Id.* at 2. Bayer responds that the Study made use of an "online survey.'" ECF No. 385-3 at 1 (quoting Study at 4) (cleaned up). Bayer does not dispute that the data was collected in 2016. Hearing Tr. 54:16–17.

In order to minimize juror confusion, the parties shall refer to the Study by its title, the "Willingness to Pay Study." Study at 1; *see* Hearing Tr. 55:22–56:3. Furthermore, Bayer shall make it clear to the jury that the study's data was collected in 2016. *Id.* 54:18–20.

Second, Tevra seeks to exclude the Study under Rule 402, arguing that it focuses on aspects of the market irrelevant to the current litigation. ECF No. 366-1 at 2–4. Specifically, Tevra claims that the Study inappropriately focuses on (1) consumers, not retailers and

2

1    distributors; (2) the international market, not the United States; (3) the wrong distribution

2    channels; and (4) products irrelevant to the current litigation.  *Id.*  Bayer responds that it is

3    reasonable for the Study to cover consumers (as opposed to retailers and distributors) and that it

4    addresses the relevant market and products in the U.S. market.  ECF No. 385-3 at 2–3.

5        Evidence is relevant if it "it has any tendency to make a fact more or less probable than it

6    would be without the evidence" and "the fact is of consequence in determining the action."  Fed.

7    R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

8        Tevra argues that the study is irrelevant because it measures consumer behavior, not

9    retailer or distributor behavior.  But it is reasonable to infer that consumer data reflects retailers'

10   and distributors' perspective on substitutability—retailers and distributors do not buy things that

11   their customers will not in turn purchase from them.  *See United States v. Am. Exp. Co.*, No. 10-

12   CV-4496 (NGG) (RER), 2014 WL 2879811, at *14 (E.D.N.Y. June 24, 2014) (denying motion *in

13   limine* to exclude market definition opinion that relied on consumer data, noting that "[s]ince

14   customer choices may well affect merchants' willingness to accept a given form of payment,

15   considering those choices is a plausible means for predicting merchants' willingness to substitute

16   different forms of payment.").  Similarly, here, the Study's focus on consumer behavior does not

17   make it irrelevant to retailer or distributor behavior.

18       Tevra also argues that the Study "does not concern sales in the [United States]."  ECF No.

19   366-1 at 2.  But according to the Study, it was explicitly made for, and used data from, the United

20   States.  *See* Study at 4.  That some pet owners from other countries are included in the Study at

21   most goes to the weight of the evidence and not its admissibility.  *See Keith v. Volpe*, 858 F.2d

22   467, 480 (9th Cir. 1988).

23       Tevra also argues that the Study covers the "wrong distribution channels."  ECF No. 366-1

24   at 3.  To this point, the parties defined the channels of distribution as "pet specialty, online,

25   general merchandisers, and veterinarians."  *See Daubert* Order at 12.  The Study appears to

26   similarly (though perhaps not identically) cover pet retailer, online retailer, and veterinary

27   distribution channels.  *See* Study at 4.  The differences here are not significant enough to warrant

28   exclusion, especially because the Study focuses on consumers, not distributors or retailers.

Finally, Tevra argues that the Study improperly limits itself to a small subset of flea and tick products and improperly considered a *minimum* proposed price increase of 7.5%. *Daubert* Order at 3–4. The Study addresses substitution between certain fipronil- and imidacloprid-based flea and tick products, the active ingredients at issue in the parties' relevant market definitions. *See, e.g.*, Study at 4, 10. Furthermore, in her report, Dr. Saravia uses the survey's findings based on the 7.5% price increase to calculate the effect of a 5% price increase. ECF No. 301-3 (Saravia Report) ¶ 74; *Daubert* Order at 5. Tevra has not shown that either purported issue warrants exclusion of the Study. Whether the Study surveyed consumers on the right products and whether Dr. Saravia's price change calculation properly applies its findings are issues best addressed with rigorous cross-examination.

Third, Tevra seeks to exclude the Study under Rule 403, arguing the Study is "likely to confuse and mislead the jury" because Dr. Saravia does not "offer any opinions regarding the relationship of the [Study] to the relevant antitrust market." ECF No. 366-1 at 4. Bayer responds with an explanation of the purpose of the Study. ECF No. 385-3 at 3–4.

A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Study is directly relevant to the jury's consideration of the relevant product market. And the Court is confident that the jury will be able to understand the differences between the Study and the issues in this case. Any risk that the Study is confusing or misleading to the jury is mitigated by Bayer making clear that the data is from 2016. *See supra*; Hearing Tr. 54:18–20; 55:22–56:3. Thus, the Court finds that the potential for misleading the jury does not outweigh the Study's probative value.

Fourth, Tevra argues that the Study is inadmissible because it "comprise[s] at least two levels of hearsay statements: (1) from pet owners to [the survey firm], and (2) from [the survey firm] to Bayer." ECF No. 366-1 at 5. Tevra also argues that the Study does not fall under the Rule 803(6) business record exception because "Bayer proffered no witness with firsthand knowledge of the study's compilation." *Id.* Bayer responds that the Study is relevant both for the

4

truth of the matter asserted under the business record exception and "to show Bayer's belief that its pricing was constrained by Frontline." ECF No. 385-3 at 5.

Courts regularly admit relevant surveys either as non-hearsay or as a business record. *See Prudential Ins. Co. of Am. V. Gibraltar Fin. Corp. of California*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception."); *BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 899–907 (N.D. Iowa 2009) (finding a presentation prepared by a third-party consultant from survey responses was admissible under Rule 803(6) as a business record and under the residual hearsay exception). Because the Study was conducted in the normal course of business and expresses the third-party firm's characterization of the survey responses, it constitutes a business record. *Id.*; Hearing Tr. 55:16–21.

Accordingly, the Court DENIES Tevra's Motion *in Limine* No. 1 with the following modifications: the parties shall refer to the Study as the "Willingness to Pay Study" and Bayer's witnesses shall acknowledge at trial that the Study's data was collected in 2016. *See* Hearing Tr. 54:18–20; 55:22–56:3.

**B.    Bayer's Motion *in Limine* No. 1 to Exclude Tevra Damages Testimony (ECF No. 370)**

In its recent *Daubert* Order, the Court granted in part and denied in part Bayer's motion to exclude Dr. Wong's "Frontline Method" damages opinion. As discussed above, the opinion is in two parts; first, Dr. Wong "estimates the quantity of [imidacloprid] sales Bayer would have lost due to generic entry without its exclusivity agreements in place"; second, "Dr. Wong opines that Tevra would have sold 100% of the 'excess units' that would have shifted from Bayer's name brand products to imidacloprid generics." *Daubert* Order at 10. The Court denied Bayer's motion to exclude the first part but granted Bayer's motion to exclude the second part. *Id.* at 10–14, 16. Tevra withdrew Dr. Wong's other damages theory, the "Projection Method." *Id.* at 14.

Here, Bayer seeks to exclude any alternative damages opinions offered by Tevra's ex-CEO Robert Scharf. ECF No. 375-2. Bayer then argues that if Mr. Scharf's opinions are excluded, there are no remaining damages theories, and that the Court should enter judgment in Bayer's

5

favor. *Id.* Tevra responds that Bayer's motion is an improper second attempt at summary judgment. ECF No. 388 at 1. Tevra argues that "[t]he jury may arrive at an appropriate determination of damages applying Dr. Wong's permitted testimony to Tevra witness facts." *Id.* at 4.

A plaintiff "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (quoting *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509–10 (9th Cir. 1985)). Oftentimes, "[s]ome sort of study estimating the amount of damages" is essential to a plaintiff's case. *Id.*; *see Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2020 WL 127612, at *6 (N.D. Cal. Jan. 10, 2020). In some circumstances, damages evidence can be introduced by a lay expert. As the drafters of the Evidence Code recognized in an advisory note to Rule 701:

> [C]ourts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business).

*Id.*, adv. committee note (2000).

Tevra advises that it intends to present its damages theory as "[a] combination of fact and expert testimony" from Dr. Wong, who will testify to the first part of the Frontline Method, and Mr. Scharf who will testify based on his experiences as CEO. ECF No. 388 at 4. If Tevra can establish Mr. Scharf's personal knowledge and expertise in lost profits and related topics, his testimony may be a proper subject under Rule 701. *Lightning Lube*, 4 F.3d at 1175.

Bayer argues that the proposed testimony from Mr. Scharf amounts to "defective projections and personal opinions" and that "Mr. Scharf has no other reliable basis for a lost sales estimate." ECF No. 375-2 at 3. While that may prove to be true, that is an issue for trial. The Court is not pre-admitting any testimony here, and notes that Tevra will have a steep hill to climb in laying foundation for and ultimately admitting Mr. Scharf's damages testimony.

Finally, Bayer expressed concern at the hearing that because Mr. Scharf did not provide

any estimate of damages at his deposition, that Bayer's expert Dr. Saravia would be inadequately prepared to rebut his testimony. Hearing Tr. 64:8–10. Bayer's point is well taken. As discussed on the record, Bayer may conduct an additional one-hour deposition of Mr. Scharf about damages. Hearing Tr. 66:2–13, 68:10–12.

Accordingly, the Court DENIES Bayer's Motion *in Limine* No. 1.

### C. Bayer's Motion *in Limine* No. 2 to Exclude Tevra's Hearsay Evidence Regarding Retailer Statements (ECF No. 371)

Bayer moves to exclude "hearsay statements" in Exhibits 500–505, 2095, 2098, 2120–22, 2211, 2213, 2220, 2278–79, 2289–90, 2309–10, 2312, 2315, 2317–18, 2324, 3001, 3008, and 3009 "and any related hearsay testimony." ECF No. 375-3 at 5. Bayer argues that a number of Tevra documents contain triple hearsay in the form of "a document summarizing a Tevra employee's report (first level) of what a third party sales representative said (second level) about what an employee of a retailer or distributor said to them (third level)." *Id.* at 2. Bayer argues that other Tevra documents contain double hearsay in the form of "a Tevra document reciting what retailers allegedly told Tevra's employees about an agreement with Bayer." *Id.*

Tevra responds that the statements are not hearsay under Rule 801(d)(2)(E) because they were made in furtherance of the alleged conspiracy. ECF No. 379-1 at 1. Tevra also argues that the emails themselves are business records. *Id.* at 5.

At the hearing, Bayer stated that it is "asking that all of these exhibits be excluded in their entirety." Hearing Tr. 69:14–17. However, as discussed on the record, the Court does not exclude exhibits "as a group," but instead will wait to see which exhibits are offered, the context of the exhibit, and foundation regarding possible co-conspirator statements, and whether it can be established that the exhibit is a business record. For this reason, the Court DENIES Bayer's Motion *in Limine* No. 2 WITHOUT PREJUDICE. *Id.* 90:2–7. For any renewed objection, Bayer shall provide Tevra with the portions of the document it seeks to exclude. *Id.*

### D. Bayer's Motion *in Limine* No. 3 to Exclude Lay Opinion Testimony and Documents Regarding Legal Conclusions and Tevra's Sales Projections (ECF No. 372)

Bayer moves to preclude Tevra from offering evidence or argument related to lay opinions

7

in three categories: "(1) patent infringement; (2) tying and below-cost pricing under the antitrust laws; and (3) Tevra's sales projections." ECF No. 375-4 at 1.  The Court addresses each in turn.

First, Bayer argues that the patent infringement opinions are improper lay opinions and that "the opinions are prejudicial and would sidetrack the jury." *Id.* at 2.  Tevra argues in response that the testimony is proper lay opinion and points to its agreement to strike certain portions of the testimony.  ECF No. 384 at 2–3.

The patent infringement opinions, whether they purportedly have a scientific basis or are just the witness's belief, are completely irrelevant to this case.  Hearing Tr. 94:6–8.  Furthermore, additional facts surrounding related patent litigation, for example, that a competitor was sued by Bayer for patent infringement, that it settled with Bayer, or that it paid royalties to Bayer, are not relevant and would be a waste of the jury's time.  *Id.* 95:5–10.  Accordingly, the Court GRANTS Bayer's Motion *in Limine* No. 3 with respect to patent infringement opinions.

Second, Bayer seeks to exclude any opinion by its ex-CEO Robert Scharf and its founder and sales manager Jim Corcuera that Bayer violated antitrust laws related to tying and below-cost pricing, arguing that the opinions "do not qualify as admissible lay opinion" and are "irrelevant and unfairly prejudicial." ECF No. 375-4 at 3.  Tevra responds that Bayer mischaracterizes the testimony, claiming that "Mr. Scharf—an experienced industry professional and Tevra founder—explains *why* Tevra filed suit" and "Mr. Corcuera—a Tevra founder with extensive industry sales experience—offers his ***personal interpretation*** of the ***fairness*** of certain terms in Bayer's agreements."  ECF No. 384 at 4 (emphasis in original).

The Court agrees with Bayer that these opinions do not qualify as admissible lay opinion.  Tevra argues that the testimony is akin to that in *Siebert*.  There, the court found that observations by an "the director of the Office of Policy for Extramural Research Administration at the NIH" "about the ordinary inner workings of" "the application and certification process for [NIH] grants" "derived from [the employee's] personal experience" were admissible.  *Siebert*, 75 F. Supp. 3d at 1113–14.  Here, Mr. Scharf and Mr. Corcuera are not lawyers, and their experience has nothing to do with the lay opinions Tevra intends to put forward.  Fed. R. Evid. 701; *see also Lightning Lube*, 4 F.3d at 1175.

Moreover, the tying and below-cost pricing opinions are irrelevant and unfairly prejudicial because they pertain to antitrust claims that Tevra either abandoned or never pleaded. What's relevant here is whether Bayer's conduct was legal, not whether a Tevra employee thinks it's fair. *See* Hearing Tr. 97:7–18.

Accordingly, the Court GRANTS Bayer's Motion *in Limine* No. 3 with respect to lay opinions regarding antitrust violations related to tying and below-cost pricing.

Third, Bayer objects to roughly two dozen internal sales projections and forecasts, *see* Trial Exhibits 616, 2037–40, 2043–50, 2190–96, 2218, 2244, 2304, arguing that they are inadmissible lay opinion. ECF No. 375-4 at 4. Tevra responds that courts regularly allow witnesses to offer lay opinion testimony about sales projections. ECF No. 384 at 4–5.

"The modern trend favors the admission of lay opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Lightning Lube*, 4 F.3d at 1175. For example, in *Lightning Lube*, the Third Circuit held that appellant established a foundation for an executive's lay opinion testimony about a report because "he personally participated in making that report." *Id.* The court continued that even if the executive hadn't prepared the report, his "knowledge and participation in the day-to-day affairs of his business, his partial reliance on the report, even if prepared by an outsider, does not render his testimony beyond the scope of Rule 701." *Id.*

The Court does not prejudge whether Tevra can lay a proper foundation to admit these sales projection exhibits, but it will give Tevra the opportunity to do so at trial. Accordingly, the Court DENIES WITHOUT PREJUDICE Bayer's Motion *in Limine* No. 3 with respect to internal sales projections and forecasts.

**E.   Bayer's Motion *in Limine* No. 4 to Exclude Evidence Regarding Retailer Product Removal (ECF No. 373)**

Bayer moves to exclude the "evidence regarding Petco's removal from its shelves of the generic imidacloprid product ▬▬▬ – a product from another generic firm, not Tevra -- and Bayer's reimbursement to ▬▬ for the costs." ECF No. 369-3 at 1. Bayer argues that "this evidence has no probative value, and is instead substantially likely to mislead the jury, waste time,

1  and be unduly prejudicial." *Id.* Tevra responds that the evidence is "relevant and admissible"
2  because it "demonstrates Bayer's payment to ▮▮▮ as part of Bayer's strategy to maintain its
3  monopoly on Imidacloprid topicals and preclude generic entry." ECF No. 377-1 at 1.

4  As discussed on the record, this evidence of alleged unlawful conduct is relevant to
5  Tevra's "no generics" conspiracy argument. Such evidence is not unfairly prejudicial just because
6  it is unfavorable to Bayer. The evidence does not draw on emotions, nor will it cause an undue
7  consumption of time. Accordingly, the Court DENIES Bayer's Motion *in Limine* No. 4.

### F. Bayer's Motion *in Limine* No. 5 to Preclude Use of the Word Conspiracy and Exclude Evidence Regarding Extra-Contractual Arrangements (ECF No. 374)

At trial, Tevra intends to refer to a "conspiracy" between Bayer and its retailers and distributors and to attempt to prove an arrangement between Bayer and its customers that goes beyond the written agreements between them. Bayer argues that Tevra should be precluded from referring to these agreements as a conspiracy "or arguing that Bayer's entered into extra-contractual arrangements with its customers." ECF No. 369-4 at 1. Bayer first notes that Tevra no longer alleges a hub and spoke conspiracy. *Id.* at 2. Bayer also argues that it has already conceded that it entered into written agreements with its customers containing an exclusivity provision, so any discussion of "conspiracy" is a surplusage. *Id.* 2–3. Finally, Bayer argues that there is "no competent evidence that Bayer and its customers agreed on exclusivity terms that went beyond the written agreements" but that even if there was, that evidence would only go to the scope of the agreement, not whether it is a conspiracy. *Id.* 3–4.

Tevra responds that it should be allowed to use the term "conspiracy" because it has alleged and can prove a conspiracy. ECF No. 382. Tevra notes that even though it dropped the hub and spoke claim, it still "plead[s] a vertical conspiracy between Bayer and its retailers." *Id.* at 1. Tevra argues that "the plain language of the Sherman Act, and the related jury instructions, both use the word 'conspiracy.'" *Id.* at 2; *see* 15 U.S.C. § 1; see also ECF No. 363 at 2, 35, 41-45, 47, 49, 83-84.

The Court agrees with Tevra. In the antitrust context, courts regularly use the terms conspiracy and contract interchangeably. For example, in *U.S. v. Nunez*, the court wrote:

> If a seller signs a contract with a buyer that sets a floor under the retail price at which the buyer may resell the seller's product, the resulting limitation on Interbrand price competition can be challenged under section 1 as a contract in restraint of trade, but equally as a conspiracy in restraint of trade; for "conspiracy" in section 1 is simply a pejorative term for a contract, both "conspiracy" and "contract" signifying an agreement, a meeting of minds.

673 F.3d 661 (7th Cir. 2012).  Similarly, in *Bogosian v. Gulf Oil Corp.*, the court wrote:

> We perceive no distinction between the terms combination and conspiracy which would distinguish the two complaints. Our reading of [Sherman 1] cases indicates that the two terms are used interchangeably. As one commentator has noted, the cases have interpreted the statute as "present(ing) a single concept about common action, not three separate ones: 'contract . . . combination or conspiracy' becomes an alliterative compound noun, roughly translated to mean 'concerted action.'

561 F.2d 434, 445 (3rd Cir. 1977) (citing L. Sullivan, Law of Antitrust 312 (1977)).  The ABA Model Instructions also define conspiracy in the antitrust context:

> The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken.

ABA Model Instruction 2.A.1 (2016 ed.).

Not only is conspiracy common parlance in civil antitrust cases, it is also alleged here by Tevra.  At the hearing, Bayer rehashed old arguments that there is no evidence of the alleged scheme based on extra-contractual agreements.  Hearing Tr. 103:9–105:5.  But the Court already addressed this when it denied Bayer's motion for summary judgment and rejected Bayer's argument that there is no evidence of an "exclusionary scheme" consisting of a "verbal 'no generics' agreement with retailers."  SJ Order at 2; Hearing Tr. 105:6–19.

Accordingly, the Court DENIES Bayer's Motion *in Limine* No. 5.  That said, it is appropriate to give an opening jury instruction to the jury clarifying that while they are tasked with determining whether Bayer engaged in an unlawful contract or conspiracy under the Sherman Act, civil antitrust law uses the terms interchangeably and that to the extent something is called a conspiracy in this case, it is no different than if it is called a contract.  Bayer may submit a

11

proposed limiting instruction.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Tevra's Motion *in Limine* No. 1 (ECF No. 368) is DENIED. The parties will refer to the Study as the "Willingness to Pay Study" and Bayer's witnesses shall acknowledge that the data was collected in 2016.
2. Bayer's Motion *in Limine* No. 1 (ECF No. 370) is DENIED.
3. Bayer's Motion *in Limine* No. 2 (ECF No. 371) is DENIED WITHOUT PREJUDICE.
4. Bayer's Motion *in Limine* No. 3 (ECF No. 372) is GRANTED with respect to patent infringement and antitrust opinions and DENIED WITHOUT PREJUDICE with respect to cost and sales projections.
5. Bayer's Motion *in Limine* No. 4 (ECF No. 373) is DENIED.
6. Bayer's Motion *in Limine* No. 5 (ECF No. 374) is DENIED.

Dated: July 2, 2024

_____
BETH LABSON FREEMAN
United States District Judge